[PHILADELPHIA, JANUARY 26TH, 1839.]

## ? FROST *against* EARNEST.

### IN ERROR.

Where an act of the legislature authorised the widening of a certain street in the District of Southwark, and provided that compensation should be made to the owners of property for damages that they might sustain thereby, by proceeding before a jury in the Court of Quarter Sessions, it was *held*, that an eviction of the plaintiff, by authority of the district for the purpose of widening the street, was not a breach of a covenant for quiet enjoyment in a lease of the premises, made after the passage of the act of assembly.

THIS was a writ of error to the District Court for the City and County of Philadelphia, to remove the record of an action of covenant, brought in that Court by Henry Frost against Jacob Earnest.

The plaintiff declared on a lease dated the 3d day of January, 1833, whereby the defendant demised to him a house and lot of ground, on Front-street in the District of Southwark, for a term of five years from the 15th day of January then following, at the rent of $155 per annum, with a covenant that the plaintiff should "peaceably and quietly have, hold, use, occupy, and possess the said demised premises with the appurtenances during the term aforesaid, without the lawful let, suit, trouble, molestation or interruption of the defendant, his heirs or assigns, or of any other person or persons whatsoever." The breach assigned was, " that the Corporation of Southwark, on the 13th day of March, A. D. 1834, ejected, expelled, and removed the said plaintiff, by due process of law, from the possession and occupation of all and every the premises, with the appurtenances, &c., and kept and held out him, the said plaintiff, so thereof expelled from his possession and occupation thereof, &c."

The defendant pleaded *non infregit conventionem,* &c.; and the cause came on for trial, before PETTIT, (President,) on the 24th of November, 1836, when the plaintiff having proved the lease declared upon, gave in evidence a notice from the solicitor of the Corporation of Southwark to the plaintiff, dated March 13th, 1834, requiring

(Frost *v*. Earnest.)

the plaintiff to remove from the premises without delay, alleging that the corporation were about, immediately, to remove the house, and to open Washington-street as the law directs. Also, a notice from the defendant to the plaintiff, dated March 14th, 1834, informing him of the eviction, &c.

Also, a receipt, dated the same day of the lease, Jan. 3rd, 1833, for $25 paid the former tenant for the good will of the premises.

Also, the record of the proceedings of the Court of Quarter Sessions of the County of Philadelphia, in relation to the assessment of damages in widening Washington-street, by which it appeared that the defendant was paid $3000 for damages to the premises in question; and, that the jury decided that tenants were not entitled to damages; and that the said Court confirmed the report of the jury.

Also, an agreement between E. Tanner and the plaintiff, dated Jan. 17th, 1833, for putting up a ten-pin alley, on the premises, at an expense of $350, with proof that the same was erected. The plaintiff also proved that the defendant admitted that the plaintiff ought to receive $500 or $600, remuneration; but denied that he was liable for the injury the plaintiff had received, and referred him to the county commissioners, and they, when applied to, said, that it was a matter between landlord and tenant, with which they had nothing to do.

The evidence offered by the defendant, related to the extent of damage done to the plaintiff; and is not material to the question on this writ of error.

The learned judge charged the jury, as follows:—

"This is an action of covenant. The plaintiff has declared upon a certain lease from the defendant to him, of a messuage and lot of ground on Front-street, in the District of Southwark. The particular covenant which, it is alleged, the defendant has broken, is, that the plaintiff should peaceably and quietly have, hold, use, occupy and possess the demised premises, with the appurtenances, during the term of five years, commencing, &c. without the lawful suit, trouble, eviction, molestation or interruption, of the said defendant, his heirs, or assigns, or of any other person or persons whatsoever. The breach assigned is, an eviction, during the term, by the Corporation of Southwark, by due process of law.

The proof of the eviction appeared in the records of the Court of Quarter Sessions of the County of Philadelphia, in regard to the opening of Washington-street, from the river Delaware to Fourth-st. under an act of assembly, passed the 25th of March, 1831; the assessment and payment of damages to the defendant; the premises mentioned in the lease, having been entirely taken and used for the purposes of said street; the notice from the solicitor of the District of Southwark, requiring the plaintiff to quit the premises without

(Frost *v.* Earnest.)

delay, and the plaintiff's immediate removal in consequence of these proceedings, and of this formal notice and requisition; the lease having nearly four years to run.

There is a broad principle of law at the very foundation of this case: if determined in favour of the defendant, it puts an end to this suit. It is denied by the defendant's counsel that the covenant comprehends such an eviction as this. I was strongly inclined to reserve this question, and submit to the jury the assessment of any damage which the plaintiff might have sustained. In that case I should probably have deemed myself bound to. say, that in point of law the inquiry was limited to the value of the unexpired term of the lease; inasmuch as neither the money paid by the plaintiff to a former tenant for the good will of the tavern stand, nor the expenses of the ten-pin alley, could be recognised, upon any legal principle, as embraced by such a covenant as this. But, upon reflection, I have formed so decided an opinion upon the important question of the cause, that I deem it my duty to state it unreservedly.

In entering into the covenant, the parties to it had in view only existing rights. Though the act of assembly had already been passed, yet it was uncertain whether the commissioners of the District of Southwark would exercise the authority conferred upon them, in reference to the widening of Washington-street, or if they exercised it, whether they would do so within the term of the lease, or, if within the said term, whether the enlarged street would embrace this property, or property on the other side of the old street. To hold this covenant to apply, would. be to say, it would apply, if not to a naked possibility, at least, to a doubtful and uncertain contingency. Upon this subject I adopt the views of the Supreme Court of Massachusetts, as delivered by Chief Justice PARSONS, in the case of *Ellis v. Welch*, (6 *Mass. Rep.* 250.)

Again, the lessor here did not covenant against any paramount right of the commonwealth. This prerogative, whether grown out of a reservation in the original grant of title to land, or founded upon the general principles of sovereignty, could not have been contemplated by the parties. The doctrine of the books by which a general covenant in a lease for quiet enjoyment, extends only to entries and interruptions by those who have lawful title, has never been regarded as comprehensive enough to reach the case of an easement acquired by the public, after the execution of the lease, though acquired under their general paramount and controlling prerogative.

Further than this:—Look to the reason, why such a covenant does not, according to all the authorities, extend to wrong doers. It is that the tenant has his remedy by action, for all tortious entries and disturbances. Now the act of assembly under which the street was widened, expressly provides for the assessment and payment of damages accruing to the owners of property in the opening of the street. The interest in an unexpired term of a lease, and in

improvements lawfully erected and put up during the term, is property, such as the act of assembly clearly contemplates, and in regard to which any damages actually accrued, would have been assessed and paid.  The tenant had the right to go before the jury appointed upon this subject, and we must presume they would have acted according to law; at any rate, the Court of Quarter Sessions would have protected him. As this remedy was open to him, he has no action upon the covenant now in question.  As to a suggestion that the defendant may have applied for, and received, in the sum awarded to him as owner of the premises, the estimated value of the property of the present plaintiff, in addition to his own proper damages, it is enough to remark, that the plaintiff, upon proof of the case, is not without a legal remedy; but the present action being upon the covenant for quiet enjoyment, does not embrace such a claim."

The jury having found a verdict for the defendant in conformity with the charge, the plaintiff took a writ of error, and assigned the following errors.

" 1. The Court erred in instructing the jury, that neither the money paid by the plaintiff, for the good will of the tavern stand, nor the expenses of the ten-pin alley, could be recovered in this suit.

2. In deciding that the lessor did not covenant against any paramount right of the commonwealth.

3. In deciding that the covenant in the lease did not extend to such an eviction as was proved by the plaintiff.

4. In deciding that the plaintiff's remedy was by proving his damages before the jury appointed by the Court of Quarter Sessions, and not by action against the lessor on the covenant in the lease.

5. In deciding that the tenant had the right to go before the jury, appointed by the Court of Quarter Sessions to assess damages, and there claim compensation for the eviction."

Mr. *Perkins*, for the plaintiff in error, cited *Lucy* v. *Levington*, (1 *Ventris*, 175. S. C. 2 *Keble*, 831 ; *Levinz*, 26.)  *Fox* v. *Huntley*, (7 *Wendell*, 210.)  *King* v. *Liverpool & Manchester Rail Way*, (4 *Adolph. & Ellis*, 650 ; S. C. 31 *Eng. Com. Law Rep.* 164. )  *Act of 25 March*, 1831.

Mr. *Keemle*, contra, referred to *Ellis* v. *Welsh*, (6 *Mass. Rep.* 246,) and *Platt on Covenants*, 312.

The opinion of the Court was delivered by

SERGEANT, J.—This lease was made in the year 1833. By the act of 25th March, 1831, Washington street had been authorised to be widened, and provision was made to compensate all "owners of property," for damages that might thereby accrue to them, by proceedings before a jury in the usual manner. There existed, therefore, at the time of the lease, a liability in the property to be taken for a street; but as the additional quantity requisite for that purpose, might be taken from the other side of the street, or from both sides, it was uncertain whether any part of the ground would be taken, or if any part, how much. It must be deemed to be an existing liability, but contingent. The question is, whether a covenant for quiet enjoyment against eviction by the defendant or his assigns or any other person, is broken by the occupation of the property by the county for the purpose of a street, when the law has provided that on so doing, compensation shall be made to the owner of property thus taken.

The covenant for quiet enjoyment is designed to indemnify the vendee for a lawful eviction by reason of defect of title in the vendor, and any disturbance thereupon. It is one of the covenants for title which have been introduced in later times in lieu of the ancient warranty. *Platt. Cov.* 304, 312. This covenant is employed in conveyances in fee-simple as well as of lesser estates, and is founded on the principle of justice, that the vendor having received the value should re-imburse to the vendee that value if the latter should lose the premises by reason of a defect of title in the vendor. But if the vendee lose the premises, not because of defect of title in the vendor, but on the very ground that the vendee has a good title from the vendor, which the state, by virtue of its sovereign power, authorises to be taken from him, stipulating to pay him for it, on what principle can he have recourse to the vendor on such a covenant? If the covenant is broken, the vendor is liable upon it, though he may neither have received nor been entitled to receive any thing: for the vendee's remedy in that case does not depend on the vendor's having received any compensation; it arises by the mere fact of the eviction and loss of the property. The case then would present the aspect of a vendee, who, on eviction, is entitled to be paid the value of his loss by the party evicting him, and at the same time may recover from the vendor for breach of covenant. This cannot be: the covenant never was designed for such an event, and is not applicable to it. It resembles the case of eviction of the vendee by a third person who is a tort-feasor. He may have his action against such tort-feasor; and therefore it has been decided that the vendor is not liable on this covenant. The same reason applies when the vendee is ousted by the sovereign power of the state under its right of eminent domain, or under reservations in the first settlement of the country, exercised according to the constitutional injunction of compensating every man whose property is taken for

the public use.    The remedy of the vendee is to look to the legislative provisions made for his indemnity, and not to the covenant for quiet enjoyment, which was introduced into conveyances for purposes entirely different.    It is not material to allege that the plaintiff received by the award of the jury more than his proportion of the damage which accrued.    That does not go to establish the breach of the covenant, which is the only matter in issue in this suit.    If the plaintiff was entitled to a portion of the whole assessment of damages, he ought to have obtained it, either from the jury of assessment, or from the Court of Quarter Sessions, on objecting to the report of the jury, and having a new assessment, or by an apportionment by the Court.    There cannot be a doubt, but a tenant is an " owner of property" within the act, and entitled to compensation for any damage he may have sustained, as well as the reversioner, or other legal claimants and incumbrancers.    But it is his duty, like that of all other claimants, to attend to his rights in due season, and to bring them before the legitimate tribunal which is to decide upon them.    The Court of Quarter Sessions exercises constantly a supervisory power over the proceedings of juries who assess damages for lands taken for streets and roads, and corrects their errors and omissions, if duly applied to by the parties interested.    In this suit, however, the only question is, whether the covenant of the defendant is broken ; and that turns on the character of the covenant in its legal interpretation, and what constitutes a breach.    On principle as well as authority, we think there was no error in the decision of the Court below.

Judgment affirmed.