## Dyer *versus* Wightman.

| 66 | 425 |
| 192 | 445 |
| 66 | 425 |
| f199 | 319 |
| 66 | 425 |
| e 22 SC | 1348 |

1. Nothing but a surrender, release or eviction can absolve a tenant from his covenant to pay rent.

2. Occupation by a disseisor or the military force of a public enemy, or destruction by providential disaster or by fire, will not relieve the tenant from the payment of rent.

3. Taking by the sovereign by right of eminent domain is not an eviction.

4. Tenants are such owners as are entitled to compensation from the Commonwealth or her grantee and must look there for compensation.

5. *It seems* that when land is appropriated by the sovereign the landlord is entitled only to the present value of his reversion subject to the term and the tenant being personally bound, is entitled to the value of his term subject to the rent and so much beside as will indemnify him for the rent payable *in futuro*.

6. When a deduction is made from the lessor's damages under appropriation by the sovereign, for the time the lease has to run and awarded to the lessee, it in equity belongs to the lessor, because by the appropriation he is deprived of recourse to the land for his rent.

7. The viewers to assess damages ought upon principles of equity to award this to the landlord and not to the tenant.

8. Such award would release the tenant from his personal obligation.

9. The fund assessed takes the place of the land, all parties are thrown upon it and the relation of landlord and tenant is extinguished.

10. N. Penna. R. R. *v.* Davis, 2 Casey 241, adopted; Mifflin *v.* Workman, 6 Id. 362, Voegtly *v.* Pitts. F. W. C. R. R., 2 Grant 243, Cuthbert *v.* Kuhn, 3 Whart. 357, distinguished.

November 7th 1870. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Allegheny county:* No. 154, to October and November Term 1869.

This was an action of debt for $80, two years' rent, brought to September Term 1868, by Samuel Dyer against Hugh Wightman.

The defence was that the premises had been appropriated by the Western Pennsylvania Railroad Company.

The case was tried before Mellon, J.

The defendant gave in evidence a lease dated April 1st 1863, from Martha M. Smith to plaintiff, for a lot of ground in Allegheny City, bounded by the Pennsylvania Canal on the one side and Washington street on the other, and lying between Federal and Sandusky streets, for five years, at $40 per annum; also, lease dated August 15th 1863, from plaintiff to defendant, for a part of this lot at the east end, until the 1st of April 1868, at the rent of $40 per annum.

The defendant then offered in evidence the record of the proceedings for damages against the Western Railroad Company upon the petition of Mrs. Smith.

The evidence was objected to by the plaintiff, admitted by the court and a bill of exceptions sealed.

The viewers reported that the company, about December 8th 1866, had taken for the use of their road the whole lot leased by

[Dyer *v.* Wightman.]

Mrs. Smith to the plaintiff, with other property adjoining it, which was under another lease, at a rent of $150, which they mentioned in their report, and which lease they found had been assigned to the company. They did not refer in their report to the lease to the plaintiff. They assessed the damages payable to Mrs. Smith at $10,000, and concluded their report: " whereupon the absolute title in fee is to be deemed vested in said railroad company, of and for said lot of land," &c.

The defendant testified that when the company were about to fence up the lot he notified the plaintiff that the lot would be of no further use; he had paid rent to the time of the possession by the railroad company; all that was useful to him had been taken, the company's fence shut him out entirely; plaintiff said he would indemnify him.

The court charged: " If the railroad company, under their charter, appropriated the demised premises, and fenced up a portion of it without relinquishing the residue, the title and possession to the demised premises were changed thereby. Both the title of Dyer and Wightman, as well as the owner of the fee, was changed; each could recover the value of his or her particular interest or estate in the land from the railroad company; but the relations of landlord and tenant between the parties was thereby extinguished, and their rights under such relationship ended."

The verdict was for the defendant. The plaintiff took a writ of error and assigned the admission of the evidence and the charge of the court for error.

L. B. *Duff* (with whom was *W. A. Leggatt*), for plaintiff in error.—The appropriation by the railroad company was not an eviction : Tiley *v.* Moyer, 7 Wright 404 ; Kessler *v.* McConachy, 1 Rawle 435. Not being an eviction by the landlord, the rent was not extinguished : Reed *v.* Ward, 10 Harris 144 ; Linton *v.* Hart, 1 Casey 193 ; Fisher *v.* Milliken, 8 Barr 111 ; Workman *v.* Mifflin, 6 Casey 362. Warranty of possession is not broken by the entry for the purposes of the road : Dobbins *v.* Brown, 2 Jones 75 ; Folts *v.* Huntley, 7 Wend. 210. The legislature cannot annul the covenants : Sturges *v.* Crowninshield, 4 Wheat. 122; Mather *v.* Bush, 16 Johns. R. 233 ; Foote *v.* The City of Cincinnati, 11 Ohio 408 ; Parks *v.* Boston, 15 Pick. 198 ; Schuylkill & D. I. & R. R. Co. *v.* Schmoele, 7 P. F. Smith 271.

J. J. *Kuhn* (with whom was *J. S. Ferguson*), for defendant in error, cited : N. Penna. Railroad Co. *v.* Davis, 2 Casey 241.

The opinion of the court was delivered, January 3d 1871, by
SHARSWOOD, J.—If the court below had been a court of law merely it would not be easy to answer the positions of the plain-

[Dyer v. Wightman.]

tiff or to resist the conclusion to which they logically lead. It is incontrovertible that nothing but a surrender, a release or an eviction can, in whole or in part, absolve the tenant from the obligation of his covenant to pay the rent: Fisher v. Milliken, 8 Barr 111. Thus if the premises have been wrongfully entered by a disseisor, and the tenant dispossessed for the entire term or even by the military force of a public enemy, or if they have been destroyed or rendered untenantable by earthquake, lightning, floods or fire, and thus all enjoyment by the tenant entirely lost, yet his covenant remains: Workman v. Mifflin, 6 Casey 369, and cases there cited. It is also equally well settled that a taking by the sovereign under the right of eminent domain is not an eviction: Frost v. Earnest, 4 Whart. 90; Dobbins v. Brown, 2 Jones 75; Ross v. Dysart, 9 Casey 452; Schuylkill and Dauphin Railroad Co. v. Schmoele, 7 P. F. Smith 271. The tenants are such owners as are entitled to compensation from the state or her grantee, and must look to that quarter for redress for any injury they may have suffered. It is their duty to attend to their rights in due season and to bring them before the legitimate tribunal which is to decide upon them: Frost v. Earnest, 4 Whart. 91; North Pennsylvania Railroad Co. v. Davis, 2 Casey 238; Workman v. Mifflin, 6 Casey 371. It may be true in strictness of law, considering the covenant to pay rent as unaffected by the proceedings of the state or her grantee to appropriate the land, that the landlord is only entitled to the present value of his reversion, subject to the term; and that on the same principle the tenant, remaining personally bound, but the subject of enjoyment having been taken from him, is entitled not merely to the value of his term, subject to the rent, but also to a sum of money which will indemnify him against the loss arising from his covenant to pay in futuro. Such appears to have been the determination in Foot v. The City of Cincinnati, 11 Ohio 408; Parks v. The City of Boston, 15 Pick. 198; Folts v. Huntley, 7 Wend. 210. But when this deduction is made from the value of the land in the damages awarded to the lessor for the time the lease has to run, and when the sum thus deducted or what might be considered as its present equivalent, the sum of the rents payable during the entire term, with a discount or rebate for the anticipation, is awarded to the lessee, to whom in equity does the money thus awarded to the tenant belong? Evidently to the lessor. It is decreed to the tenant for the purpose of enabling him to meet and discharge his personal covenant to pay the rent in futuro according to the stipulation in the lease. Surely equity, considering that by the act of the law the landlord has been deprived of all recourse to the land either by distress or re-entry, and is thrown altogether upon the personal responsibility of the tenant, would not suffer him after having received and pocketed the amount to snap his finger at his landlord and walk off. Not

[Dyer *v.* Wightman.]

only all courts but all other tribunals in Pennsylvania proceed upon the principles of equity; for equity is a part of our law. It is the same system of justice whether administered through common-law forms or by bill and subpœna. They are bound to consider that as actually done which a chancellor would decree to be done. Thus equitable results are arrived at *per saltum,* without the circuity of turning the party round to another proceeding upon the equity side of the court. If a chancellor would regard the damages awarded to the tenant to indemnify him against his covenant to pay rent as in equity the money of the landlord, and decree it to be paid to him, a jury of view to assess damages ought at once to award it to him. The inevitable consequence of such award is to release the tenant from his personal obligation. The landlord receives his full loss—the value of the rent and the reversion—what the land subject to the term would be worth to a purchaser of the reversion, who would of course be entitled to the rent as incident to it. The tenant receives his full loss—the value of his term subject to the rent—what it would be worth to an assignee who would assume the payment of the rent. If the rent is the full value of the premises, he has lost nothing and is entitled to receive nothing. If he has paid a consideration for the term, and has it at a peppercorn or nominal rent, he is entitled to recover whatever such a lease is worth. Thus there is no circuity. All parties at once are compensated for their actual loss by the appropriation of the ground to public use. The fund takes the place of the land. They are thrown upon it, and if they have neglected to seek their remedy there the fault is their own. The damages awarded thus taking the place of the land, the relation of landlord and tenant is extinguished, and all covenants growing out of that relation are necessarily at an end. The covenant by the lessee to surrender peaceable possession of the premises at the end of the term would certainly be so. Performance of it would be rendered impossible by the act of the law. Suppose a covenant by the tenant to build. Such a covenant would be a very important element in determining the respective amounts justly payable to the parties, but all claim of the lessor against the lessee for its breach would be gone. We believe the rule for the measure of damages, when lessor and lessee have claimed compensation for land taken for public use, has always been in this state that which we have herein propounded. It is so stated as to the lessee by Woodward, J., in The North Pennsylvania Railroad Co. *v.* Davis, 2 Casey 241. "The direct injury done to them (the lessees), or in other words the value of the thing taken from them, was to be measured by the worth of the lot at the stipulated rents for the residue of the term." Nor is it inconsistent with the judgment in Mifflin *v.* Workman, 6 Casey 362. There the ground landlord, having a rent in fee issuing from the premises—a distinct and

[Dyer *v.* Wightman.]

independent estate—was held not to be such an owner as could claim compensation from the public. The tenant of the land had received its full value in damages, and neither in law nor equity was discharged from his personal covenant to pay the rent. And in Voegtly *v.* The Pittsburg and Fort Wayne Railroad Co., 2 Grant 243, it is said, " If part of the ground be taken for public use of a highway, equity will apportion the rent in relief of the tenant, compensating the landlord out of the damages awarded." In Cuthbert *v.* Kuhn, 3 Whart. 357, it was held that a ground-rent was in equity apportioned by the opening of a street, and that the rent was reduced in proportion to the amount of the lot taken for public use. But that was where the tenant of the land by a bill in equity offered to pay to the ground landlord the value of his rent out of the damages awarded. That case has never been overruled—certainly not in Mifflin *v.* Workman, and Voegtly *v.* The Pittsburg and Fort Wayne Railroad Co. It is rather affirmed as standing on its own peculiar ground of equity. If the principle of Cuthbert *v.* Kuhn be sound it goes far to resolve all the difficulty there is in the case before us. The tenant having received the damages awarded in part as a compensation for his personal liability on his covenant to pay the ground-rent *in futuro*, could in equity compel his landlord to accept it and release him from his covenant. That shows that in the case of a lease for years those damages ought directly to be awarded to the lessor. Nor are the cases of Frost *v.* Earnest, 4 Whart. 86, and Dobbins *v.* Brown, 2 Jones 75, inconsistent with this view. The lessee having the right to compensation for his injury from the public, has no title at law or in equity to sue his landlord for damages either for breach of the covenant of quiet enjoyment or of warranty. At law, as we have seen, it is no eviction. In equity it is a conclusive answer that he has another recourse provided for him which is ample and adequate.

This course of reasoning has brought us to the conclusion that the learned judge below committed no error in admitting the evidence of the proceedings to appropriate the lot and the report of the viewers, and in instructing the jury that the relation of landlord and tenant between the parties was thereby extinguished and their rights under such relationship ended.

Judgment affirmed.