## American Truck Rental Corp. v. City of Philadelphia

*Herman J. Obert*, for plaintiff.

*Augustus R. Sigismondi*, Assistant City Solicitor, and *David Berger*, City Solicitor, for defendant.

FLOOD, J., January 16, 1958.—Prior to January 1, 1952, plaintiff, American Truck Rental Corporation, was the owner of premises 4000 Richmond Street,

Philadelphia, a property improved for use as a trucking terminal and used as such by the trucking firm of E. A. Gallagher & Sons. The property was legally taken by the City of Philadelphia for municipal improvements by ordinance effective January 1, 1952. The board of view, appointed January 10, 1952, made an award of $157,100, under date of June 17, 1955, from which both parties filed appeals. The appeals were tried together before a jury from October 14 to October 17, 1957. The jury returned a verdict for plaintiff in the sum of $166,217.36.

The amount of the verdict was computed by the attorneys and recorded by the court from the following special findings of the jury:

(1) The value of the property on January 1, 1952, was $140,000.

(2) The average commercial rate of interest payable on that amount from January 1, 1952, to October 17, 1957, was five and one-half percent.

(3) The value of the use of the property to the plaintiff after January 1, 1952, was $6,000 per year.

(4) The city is entitled to set off against plaintiff's claim the use value of the property from January 1, 1952, to February 1, 1955.

Plaintiff's attorney, being satisfied that the computation was substantially correct, agreed to a remittitur of such amount of the verdict as may have been miscalculated in his favor. In our opinion, there was a miscalculation and the amount should be $166,117.22.

We have before us defendant's motion for a new trial and two motions by plaintiff, one for judgment in his favor for "$184.717.36 (to include the sum of $18,500.00, use value of the property after condemnation deducted by special finding of the jury), non obstante veredicto upon the whole record", the other to "amend and correct the verdict . . . so as to include the sum of $18,500.00 . . . to increase the

amount . . . to $184,717.36". By these alternative motions plaintiff seeks to have the verdict increased by eliminating the credit allowed the city for use and occupancy of the property of E. A. Gallagher & Sons between the time of taking and the entry of the city into possession. . . .

By his alternative motions for judgment n. o. v. upon the whole record and to amend the verdict plaintiff seeks to increase the verdict by eliminating the $18,500 set-off for use and occupancy which was applied against its claim for damages for detention. Plaintiff argues that evidence of use and occupancy by E. A. Gallagher & Sons following the taking does not support a set-off against plaintiff, American Truck Rental Corporation, because the two companies legally are distinct entities, the interest of the owners of each being merely related and not identical. Defendant contends that the court should "pierce the corporate veil" and attribute to plaintiff the beneficial use and occupancy by the related company.

The record shows only that some of the same people are interested (in unknown proportions) in each company; plaintiff corporation was formed by Arthur A. Gallagher, a director and chairman of the board of the corporation, who is also a 15 percent partner in the Gallagher firm, to acquire the property in question for the purpose of leasing it to the Gallagher firm; that the latter firm continued to occupy and use the property for a period after as before the condemnation, to a somewhat diminished degree; that the Gallagher firm stopped paying rent in 1952, and that defendant's correspondence following the taking, concerning interference with the use of the property by a contractor engaged to make test borings, and the city's notice to vacate the property were directed to plaintiff rather than to the Gallagher firm and were received by Arthur A. Gallagher. Plaintiff's and defendant's ex-

perts testified that the use value of the property on a temporary basis following the condemnation was $6,000 and $7,500 yearly, respectively, which is roughly one-half the rental value in the absence of a condemnation.

Although plaintiff moved to strike certain testimony concerning the value of the use of the property following condemnation on the ground that regardless of the worth of such use the owner "actually didn't get it and couldn't get it", for the most part evidence concerning value and use by the Gallagher firm was received without objection. During the course of the trial plaintiff's efforts were largely directed instead towards minimizing the extent of the Gallagher firm's use. In the absence of evidence concerning the amount of the prior rentals, the precise date when rentals ceased and the terms of the lease, the court permitted the jury to determine by special findings the value to plaintiff of the use and whether or not this value should be set off against plaintiff's claim for damages.

We do not believe that the value of the Gallagher firm's use properly may be set off against plaintiff's damages for detention merely because the ownership of the two companies was somewhat related. However, although the evidence of benefit to plaintiff is not the most satisfactory, yet, in our opinion, all of it, taken together, is sufficient to make out defendant's prima facie case. The premises were under lease to a closely related company at the time of the taking and the tenant's occupation and use continued uninterrupted after as before, with the tacit approval of the city. The city received no notice of any change in the relationship between plaintiff and the Gallagher firm. In matters affecting interference with and cessation of the use it dealt exclusively with plaintiff, and it made no claim against the Gallagher firm for its use.

Having proved that the premises were subject to lease to a closely related company and that the latter's use and occupancy continued, we think the jury might infer, and perhaps would be required to find, that the relationship which existed before the taking, whatever it may have been, continued during the period of the use, and that the tenant legally was obligated to continue paying the stipulated rental, or at least an amount equal to the value of its diminished use. From this the jury might have inferred that plaintiff was in possession and use of the property after the condemnation through his tenant. The fact that no rents actually were paid would not defeat the city's right of set-off if the tenant had a legal obligation to plaintiff to pay for its use.

Tenants who have relinquished possession because of the entry of the condemnor into possession (Dyer v. Wightman, 66 Pa. 425 (1871)), because of receipt of notice to vacate from the condemnor (Uhler v. Cowen, 199 Pa. 316 (1901)), or simply because the premises have been condemned (Levine v. Horwitz, 373 Pa. 277 (1953)), have been held not to be liable to the owner-landlord for the balance of the rentals due under the lease. Assuming a right on the part of a tenant to terminate an existing lease by vacating the premises upon condemnation, no case has been found relieving a tenant from the obligation of paying rent to the owner-landlord for the period he remains in possession following the condemnation.

". . . a taking under eminent domain proceedings which absolves the tenant from his liability of paying rent is not effected by the mere vesting of the title in the condemnor, but requires surrendering of possession by the tenant. W. M. McDonald Co. v. Hawkins (1934), 287 Mass. 71, 191 N. E. 405; Goldstein v. Stadler's Shoes (1936), 159 Misc. 804, 288 N. Y. S.

793": Annotation: Landlord and Tenant—Eminent Domain, 163 A. L. R. 679, 680-681 (1946).

For these reasons plaintiff's motions must be denied.

In view of plaintiff's agreement to a remittitur in the event of a miscalculation of verdict, judgment will be entered in his favor in the sum of $166,117.22.

## Order

And now, January 16, 1958, defendant's motion for a new trial and plaintiff's motions to amend the verdict or for judgment n. o. v. are overruled. Judgment is entered upon the verdict for plaintiff in the sum of $166,117.22.