## Enoch Patterson, Junior, *versus* The City of Boston.

The complainant took a lease of a store in the city of Boston, for three years, covenanting to pay the rent and to leave the premises in good repair at the end of the term, and the lessor reserving a right to enter and make improvements. The front part of the land was taken and the front wall of the building was cut off by the city, for the purpose of widening the street. It was *held,* that this act of the city did not put an end to the term, nor release the lessee from his covenants to pay rent and make repairs.

Whether the erection of a new wall on the new line fixed for the street, was in the nature of a reparation which the lessee's covenant bound him to make, or whether it was not rather an addition or improvement, *quære.*

Put the lessee, in the first instance, and if he declined, the lessor, had a right to build such wall, and the expense of it is a proper item of claim for damages against the city.

Whether the lessee has built such wall himself, or paid the lessor for building it, does not affect his claim against the city, unless the lessor built it on his own account and received remuneration from the city ; in which case he was not entitled to recover the amount from the lessee, and the city is not to be charged a second time for the same damage.

The damage sustained by the lessee in being deprived of the use of his store, and for which he is entitled to recover of the city, is to be computed for such time as would be reasonably necessary to remove his goods and make the repairs and move back again ; and the loss or the value of the store to him for that period, and not the rent and taxes specifically, is the measure of his indemnity.

The lessee is also to be remunerated for the diminished value of the premises caused by the taking of part, for the residue of the term, he continuing to pay at the same rate the rent and taxes.

*It seems* he is not entitled to damages for loss of custom, occasioned by his being obliged to occupy a less advantageous place of business while the repairs are making.

In estimating the damages sustained by an individual by reason of his land being taken for public use, the jury may rightfully be influenced by their general knowledge and experience of like subjects, as well as by the testimony and opinion of the witnesses.

In this case the plaintiff had filed his complaint for an assessment by a jury, of the damages sustained by him by reason of a part of his store and cellar being taken by the defendants to widen Doane Street, in the city of Boston.

The defendants pleaded that the plaintiff had sustained no damage, and thereupon issue was joined ; and at January term 1837, of the Court of Common Pleas, a jury was empannelled to try the issue.

Upon the trial, before *Ward* C. J., the complainant gave in evidence an indenture, by which Elisha Parks, the owner of the store, leased to the complainant the lower story and cellar of his store at the corner of Doane on Kilby Street, for the term of three years from January 1, 1829, and the complainant covenants to pay therefor the rent of $725 *per annum*, and ten per cent per annum on the amount of repairs and improvements, and to pay all taxes levied thereon during the term, and to deliver up the premises, at the end of the term, in as good order and condition, reasonable use and wearing thereof excepted, as the same now are or may be put into by the lessor, loss by fire only excepted, and not to make or suffer any waste thereof, nor make or suffer to be made any alterations therein, but with the approbation of the lessor.

It was proved, that the mayor and aldermen of Boston, on March 5, 1829, passed an order widening Doane Street, by taking the land in question, and on July 13, 1829, actually cut off and removed so much of the store as stood on the land so taken. The second story of the store and part of the third, were leased by Parks to Moses Barnard and Alfred Dutch, to hold for the term of seven years from September 3, 1823, and the remainder of the third story was occupied by Parks himself.

The complainant claimed, and offered evidence to prove, as a part of his damages, the expense necessary to rebuild the wall, and repair the injury done to other parts of the remaining portion of his store and cellar, by the cutting off a part as above mentioned ; and that he had paid the same to Parks ; but the judge rejected the evidence, and instructed the jury, that the complainant was not by law liable on his cove-

nants to repair the remainder of his store, after a part of the land had been taken by the city, and a part of the building cut off, and could not legally claim or recover any thing therefor, inasmuch as the necessity of making these repairs and building the wall, was occasioned by the mayor and aldermen's taking the land for widening the street, an event not contemplated by Parks and Patterson at the time when the lease was made.

The complainant also offered evidence to prove, as part of the damages which he claimed to recover, that he was liable to pay and had paid to Parks the rent and taxes on the store and cellar as the same were reserved in the lease, from July 13, 1829, when the land was taken, until August 20, 1831, when the store and cellar were again rendered tenantable by Parks ; but the judge rejected the evidence, and instructed the jury, that the complainant was not by law liable on his covenants to pay any rent or taxes to Parks after a part of the land had been taken by the city and a part of the building cut off, and could not legally claim or recover any thing therefor, inasmuch as the leased estate had been rendered wholly useless and untenantable by taking off a part thereof, an event not contemplated by Parks and Patterson when the lease was made, and Parks not having built up the wall nor made the estate tenantable from July 29, 1829, to August 20, 1831 ; but the judge further instructed the jury, that Patterson not being bound to repair ought not to be prejudiced by not having repaired nor offered to do it.

The complainant also, to prove that he had sustained great loss in his business, besides the actual expense of removing his goods, produced witnesses who stated that a person engaged in the business of the complainant, would necessarily sustain considerable damage by removing from his place of business, by loss of custom and good will and otherwise, unless he should remove to a place of business so much better as to compensate that loss ; and they estimated the loss at various sums, from 500 to 3000 dollars. And the complainant then offered evidence to prove that he could not obtain and did not obtain a store, after he was removed, of nearly equal advantage, but was obliged to remove into a very inconvenient

Patterson
*v.*
Boston.

store in a much less advantageous place of business, and that he in fact, in consequence thereof, sold in the store to which he removed, a much smaller amount of goods and made a much less profit than in the same corresponding months, before he was removed by the city ; and the complainant claimed to recover damages on this account. But the judge rejected the evidence, and instructed the jury, that the complainant could not by law recover for any loss except the value of his lease over and above the rent agreed to be paid, and the actual expense of removing his goods, and the injury, if any, which the goods had sustained by being removed, and the loss of custom while actually engaged in removing ; and that the jury must disregard all evidence of any other loss whatever ; and that in judging of the value of the lease, the jury should confine themselves to the evidence of what it was worth, as things stood on July 13, 1829 ; that the court and jury, in the trial of causes between party and party, never made up judgments or returned verdicts upon speculation principles, or looked to remote and contingent consequences, but regarded those consequences only which were immediate and proximate ; that the presumption was, that if a person from whom an estate was taken, received the value of it in money at the time it was taken, he could procure another estate of equal value in every respect, and whether the complainant obtained a better estate for less money than the fair value of the estate taken from him, and did more business and with greater profit, or whether he did not or could not procure so good an estate, would make no part of their inquiry ; and that they must give the complainant the full value of the estate taken from him, at the time when it was taken, without having any regard to remote or contingent consequences.

The judge further instructed the jury, that in estimating the amount of the plaintiff's damages, if any one of them knew, of his own knowledge, any material fact which bore upon the issue, he ought to disclose it, and be sworn, and communicate it to his fellows in open court and in the presence of the parties ; but that in making up their verdict, they might rightfully be influenced by their general knowledge on such subjects, as well as by the testimony and opinion of witnesses.

To the foregoing rulings and instructions the complainant filed exceptions.

*B. Rand* and *F. Dexter* supported the exceptions. The act of the city could not affect the contract between the lessor and lessee, and the lessee being bound by express covenants to pay rent and taxes and to leave the premises in good repair, he is entitled to recover as damages the amount which he paid the lessor for repairing the store, and the amount of the rent and taxes for the time that it remained untenantable. *Parks* v. *Boston*, 15 Pick. 198 ; Comyn on Landlord and Tenant, 185, 192, 193 ; *Leeds* v. *Cheetham*, 1 Simons, 146 ; *Baker* v. *Holtpzaffel*, 4 Taunt. 45 ; *Holtzapffel* v. *Baker*, 18 Ves. 115 ; *Folts* v. *Huntley*, 7 Wendell, 210.

It is equitable that the complainant should recover for the loss of custom sustained in consequence of his being obliged to remove to a less advantageous place of business, and the ruling of the judge on this point was erroneous.

The jury were misinstructed, that in making up their verdict they might rightfully be influenced by their general knowledge on such subjects. They ought to be governed solely by the evidence laid before them. This question came up in *Parks* v. *Boston*, 15 Pick. 198, but there the jury viewed the premises and acquired knowledge by inspection for the purposes of the trial.

*J. Pickering* (City Solicitor) and *C. P. Curtis, contrà*, admitted that the instruction in regard to the complainant's obligation to repair, was erroneous, but they contended that he ought to have repaired within a reasonable time, and that in regard to rent accruing after the lapse of such reasonable time the city was not responsible.

SHAW C. J. delivered the opinion of the Court. One large item of damage claimed by the plaintiff, but rejected by the Court of Common Pleas, was for the reimbursement of a sum of money paid to Parks, the landlord, for a new front wall to the warehouse, rendered necessary by removing the old front wall to widen the street, and alleged to have been paid by the plaintiff, in pursuance of his covenant to deliver up the premises at the end of the term, in as good order and condition &c., reasonable wear and loss by fire excepted.

Whether this covenant of the lessee, bound him to rebuild the front wall, on the new line fixed for the street, and whether he had rightfully and in pursuance of a legal obligation, paid for rebuilding it, are questions which would require more consideration, if it were necessary now to decide them. But if Parks, as landlord and general owner of the estate, rebuilt that front wall, on the ground of repairing the damage done to his inheritance and freehold, as he well might, it being under a short lease for years, and claimed the cost of it as an item of his own damage, against the city, and had that claim allowed to him, it seems very clear, that he could not claim it again of the plaintiff as tenant, and through him of the city, whether the covenant bound the tenant to this extent or not. The questions of difficulty in regard to the covenant to leave the premises in as good order and condition &c., are these ; first, whether the building of a new front wall on a new line, fixed by lawful authority, is in the nature of reparation, keeping the estate in as good a condition as it was ; or whether it was not rather a new-erection, in the nature of addition or improvement ; second, whether if a damage is done by the public, in pursuance of a lawful authority, for which the landlord has a plain and adequate remedy, it is damage, which a lessee under such a covenant is bound to make good. He could not leave the front wall in the same, or in as good a condition, because he was prohibited by an authority paramount, both to his own and his landlord's rights.

But as already suggested, this case does not necessarily involve this question, because either the landlord or the tenant, each on account of his own interest, would have a right, under such circumstances, to rebuild the wall, as being necessary to the enjoyment of the estate ; the tenant in the first instance, as being in possession, and having a paramount right of occupation and enjoyment ; but if he declined, then the landlord would have the right to do it, for the preservation of his estate. In either case, it would seem to be a proper item of claim for damage upon the city ; but for the same item of damage, the city ought not to be twice charged. In this view therefore, whether Patterson was bound by his covenant to rebuild the wall or not, as between himself and Parks, yet if he did pay

· Parks for rebuilding it, and Parks has not been paid for the same by the city, it is a proper item of claim against the city, to the extent of that proportion of it, which the complainant Patterson ought to pay. It appears that there were three tenants, to whose enjoyment of their respective interests as tenants in possession, this wall was necessary, Patterson, who occupied the lower floor and cellar, Barnard and Dutch, who occupied the second story, and Parks himself, who occupied the third. Such proportion of the expense as Patterson would be bound to pay, upon an equitable apportionment, was a damage done to his term, and whether he built it himself or paid Parks for building it, is immaterial, unless Parks as land-lord and general owner built it on his own account, and has already received payment for it, from the city. The same rule applies to any other expenses, if any, which the plaintiff has paid to Parks, for repairing damage done to other parts of the tenement.

Another question arises, as to the length of time, for which the plaintiff can claim, as having been deprived of the use of his warehouse for repairs, after the front of it was taken down, for widening the street. The Court are of opinion, that it should be computed for such time as would be reasonably necessary to remove, and make the repairs, and move back again ; and that he is not entitled to recover for the loss of his tenement from July 1829 to September 1830, if all that time was unnecessary and unreasonable for the purposes above stated.

The Court are of opinion, that there was error in the instruction of the court below, that by taking a part of the leased premises for public use as a highway, the tenant was excused from the payment of rent and taxes ; on the contrary, they are of opinion, that the lease remained in force, and the tenant continued liable for rent and taxes, and for the performance of his other covenants, as if the estate had not been so in part taken for public improvement.

The plaintiff therefore was entitled to be remunerated in damages, for the loss of the use of his tenement during the time he was necessarily deprived of it, together with the diminished value of the premises, caused by the taking of

part, for the residue of the term, he continuing to pay at the same rate the rent and taxes.

He is not specifically to recover back the rent and taxes paid by him whilst he was necessarily deprived of the use of the tenement, because it might be worth more or less than the rent and taxes, and the value to him, and the loss of that value for the time mentioned, was the measure of his claim to indemnity.

As to the complaint for contingent damages, for loss of custom, no very definite rule can be laid down, and as there must be a new trial on other grounds, it is not necessary. As a general rule it may be stated, that direct and proximate damages are to be looked to, in such cases, and there seems to be no objection to the directions given by the court below, on this subject. But cases depend so much upon their own circumstances, that very definite rules *a priori* cannot be expected.

In regard to the directions of the court as to the use which juries may make of their own general knowledge and experience, it seems to us that they are not open to exceptions. Juries would be very little fit for the high and responsible office, to which they are called, especially to make an appraisement, which depends on knowledge and experience, if they might not avail themselves of these powers of their minds, when they are most necessary to the performance of their duties. If a juror knows any particular fact, bearing upon the questions at issue, it is proper for him to state it in open court as a witness, as well that the testimony may go to his brethren under the sanction of an oath, as that the party against whom it bears, may have the privilege of cross-examining, and that the counsel and the court respectively may be informed of the evidence on which the jury is to act, and make such use of it, as their respective duties may require.

*Exceptions sustained.    Verdict set aside and a new tria.
granted, to be had at the bar of this Court.*