## The City of Chicago

### v.

## John J. Garrity et al.

1. Condemnation of property to public use—Estate of tenant for years.—The estate of a tenant for years is liable to be taken by the public by virtue of the right of eminent domain, upon precisely the same terms upon which any other estate in lands may be taken, viz: compensation by the public for the property taken.

2. Compensation—To whom paid.—The compensation for which the public is liable in condemning land, must go to those who are entitled to the property itself, in proportion to their several interests.

3. Tenant liable for entire rent.—Where land held by a tenant under a lease for a term of years, is taken by condemnation to public use, the tenant remains liable to his landlord for the entire rent, according to the terms of his lease.

4. Condemnation does not extinguish lease.—As between landlord and tenant, the condemnation of land does not operate as an extinguishment in whole or in part of the lease.

5. Apportionment of compensation.—A tenant is entitled to receive from the public full compensation for so much of his leasehold estate as is appropriated to the public use. And the compensation to be awarded to the landlord should be diminished by reason of the existence of the leasehold estate only by such an amount as the evidence shows that the actual rental value of the premises exceeds the rent reserved.

6. RIGHT OF PUBLIC TO REQUIRE APPORTIONMENT OF DAMAGES.—The damages awarded the landlord and tenant respectively, are the results of independent assessments; and because the aggregate assessment may exceed the entire value of the property taken, the public power seeking the condemnation has such an interest therein that it may insist upon a proper apportionment of damages between landlord and tenant.

7. GOOD-WILL IN BUSINESS AS AN ELEMENT OF DAMAGE.—Whether a tenant would be entitled to damages for loss of good-will in his business, is not decided. If the jury were of opinion that the evidence established any damages of that character, they might, possibly, have assessed them in a separate item, but evidence of such damages cannot be resorted to in support of a general assessment of damages for other items of property taken.

APPEAL from the Superior Court of Cook county; the Hon. John A. JAMESON, Judge, presiding.     Opinion on rehearing filed November 8, 1880.

This is an appeal from a judgment in favor of appellees, rendered in a proceeding to ascertain the compensation to be made to the owners of property to be taken or damaged by the widening of State street, Chicago, to the width of one hundred feet.     The particular property in controvery is, sub-lot 1, block 3, O. H. Walker's subdivision, etc., situated on the southeast corner of State and Thirty-first streets.     Said lot is twenty-five feet in width on State street, and extends back one hundred feet along Thirty-first street, and by the proposed condemnation, thirty-four feet is to be taken from the end of the lot fronting on State street.

The improvements on said lot consist of a two-story frame building, twenty-two feet wide, fronting on State street, and extending back thirty feet on Thirty-first street; and adjoining said frame building is a one-story brick building, twenty-two feet wide, extending back to the rear end of the lot.

Said premises are owned by Garrity, one of the appellees, and Cudney, the other appellee, holds a lease from Garrity for all of said lot, except the rear fourteen feet of the brick building, which is occupied by another party as a barber's shop. Cudney's lease extends from January 25, 1879, to April 30, 1884, and reserves a rent of $60 per month, during the term, payable monthly, and ever since the date of said lease said

Cudney has been occupying the premises as a retail liquor saloon.

The verdict of the jury fixes the compensation to be paid Garrity $3,300, viz: for the thirty-four feet of said lot to be taken, and the improvements thereon $2,800, and for the damages to the remainder of said lot, $500. It also fixes the compensation to be paid to Cudney at $1,800, viz : for his leasehold interest in said thirty-four feet, and buildings and improvements thereon, $1,600, and for damages to fixtures and improvements, $200.

Judgment having been rendered by the court in favor of Garrity and Cudney, for the amount of compensation awarded them respectively, the City of Chicago has brought the record here by appeal, and assigned errors.

Mr. RICHARD PRENDERGAST, for appellee; upon petition for rehearing, contending that the taking of the property by eminent domain was not a breach of the covenants in the lease, and did not release the tenant from payment of rent, cited Ellis v. Welch, 6 Mass. 246; Parks v. Boston, 15 Pick, 198; Patterson v. Boston, 20 Pick, 159; Foote v. Cincinnati, 11 Ohio, 408; Workman v. Mifflin, 30 Pa. St. 632; Frost v. Ernest, 4 Whart. 86; Ross v. Dysart, 9 Casey, 452; S. & D. R. Co. v. Schmoele, 7 P. F. Smith, 271; N. P. R. Co. v. Davis, 2 Casey, 238; Peck v. Jones, 70 Pa. St. 83; Tiley v. Mayor, 7 Wright, 404; Kessler v. McConachy, 1 Rawle, 435; Reed v. Ward, 10 Harris, 144; Linton v. Hart, 1 Casey, 193; Fisher v. Millikin, 8 Barr, 111; Foltz v. Huntley, 7 Wend. 210; McLaren v. Spalding, 2 Cal. 510; A. & F. R. R. Co. v. Kenny, 39 Ala. 307; Osborn v. Wallace, 13 Wall. 354; Phillips v. Evans, 38 Mo. 305; Whitworth v. Carter, 43 Miss. 61; Willis v. Hallibastor, 25 Ark. 173; Fitzpatrick v. Hearne, 44 Ala. 171; Hand v. Armstrong, 34 Ga. 232; Walker v. Gatlin, 12 Fla. 9; Porter v. Ralston, 6 Bush, 665; Rawle on Covenants, 140; 2 Wait's Actions and Defenses, 382; Mills on Eminent Domain, § 37; 1 Washburn on Real Property, 527; West River Bridge Co. v. Dix, 6 How. 507.

The good-will in the business is an element to be considered

in assessing damages: Glover v. N. Staffordshire, R. 17 E. C. L. 911; London & Nor. R. R. v. Smith, 1 Mac. & G. 216; Lloyd on Compensation, 99; Angell on Watercourses, 610; Sedgwick on Damages, 89; Cameron v. Charing Cross R. R. Co. 10 L. T. Rep. 381; Rickett v. Metropolitan R. R. Co. 34 L. T. Rep. 257; Chapman v. Kirby, 49 Ill. 211.

BAILEY, J.  On the trial of this cause, the court, at the instance of Garrity, gave to the jury the following instructions:

" The jury are instructed that the tenant, Cudney, will be released from the payment of rent for the premises sought to be condemned by this proceeding, whenever possession is taken of the same by the city.

" The jury are instructed to make no deduction from the amount to be awarded to the owner of the premises sought to be condemned, on the southeast corner of State and Thirty-first streets, by reason of the leasehold interest upon the same, if they believe from the evidence that the rent reserved by the lease thereof is equal to the full annual rent at value of the said property."

It is manifest, that in this case, the amount of compensation which the landlord and tenant, repectively, are entitled to receive for the property taken or damaged for the proposed improvement, must depend, to a considerable extent, upon the effect which the taking of a portion of the demised premises for the public use, by an exercise of the power of eminent domain, will produce upon the tenancy itself.  If the lease is thereby annulled and the tenancy terminated, or even [if the rent is proportionally abated, the landlord is clearly entitled to a larger, and the tenant to a smaller, compensation, than would be their due, if it should be held that the liability of the tenant for the rent continued for the residue of the term, unaffected by the appropriation to public use of a portion of the premises.

We are aware of no decision in this state upon this question, and the decisions of the courts of the other states in relation to it, are not entirely harmonious.  We are of the opinion, however, that the weight of authority is clearly in

favor of the principle that the tenant remains liable for the entire rent, notwithstanding the condemnation of a portion of the property to public use.

So far as our researches have extended, the only state where a different rule prevails, is Missouri. It is true, the case of Gillespie v. Thomas, 15 Wend. 464, holds that when a portion of the premises is taken, the tenant is entitled to an abatement of the rent, proportionate to the value of the part so taken, but that decision was based exclusively upon a statute of that state, which provided that whenever the entire premises were taken for the opening or widening of a street, the covenants and engagements between landlord and tenant should cease and be discharged, and that where only a part was taken, the rent should be equitably apportioned.

In the same state, however, in Folts v. Huntley, 7 Wend. 210, a case which does not seem to have been controlled by any statute, the demised premises, which consisted of a mill privilege, were taken by the canal commissioners for the purpose of constructing a feeder to the Erie canal, and it was held that such taking was not an eviction by paramount title, so as to relieve the lessee from the payment of rent and the performance of his covenants.

The question first arose in Missouri in Biddle v. Hussman, 23 Mo. 597. In that case, Biddle conveyed to the city of St. Louis a part of the premises previously leased to Hussman, and the part conveyed was afterwards taken by the city by process of condemnation. Subsequently, Biddle sued Hussman for the rent of the entire premises. The court held that, as to the part appropriated to public use, the rent was extinguished, placing their decision mainly upon the effect of the conveyance, but at the same time holding that the condemnation proceedings produced the same result. They say: "The condemnation was a reassumption by the state of her original title to the land under the right of eminent domain. It was a revocation of the landlord's title, and may well be considered as extinguishing all rights depending upon the continuance of that title."

In Kingsland v. Clark, 24 Mo. 24, after a part of the de-

mised premises had been appropriated to public use by condemnation, a proceeding in equity was brought to ascertain and settle the amount of rent accruing under the lease, and on the authority of Biddle v. Hussman, it was held that a proportionate part of the rent was extinguished.

The case of Barclay v. Pickles, 38 Mo. 143, was an action for the rent of certain premises which had, subsequently to the demise, been taken by the city of St. Louis for a street. The court held that the tenancy was terminated, quoting as the basis of their decision, the following language from Taylor on Landlord and Tenant, Sec. 519: " As a general rule, whenever the estate which the lessor had at the time of making the lease is defeated or determined, the lease is extinguished with it. If, therefore, a lot of land, or other premises under lease is required to be taken for city or other public improvements, the lease, upon the confirmation of the report of the commissioners condemning the property, becomes void."

Mr. Washburn, in his learned treatise on the law of real property, after stating the rule prevailing in Missouri, says: " But the better rule, and one believed to be adopted in most of the states, is, that such a taking operates, so far as the lessee is concerned, upon his interest as property for which the public are to make him compensation, and does not affect his liability to pay rent for the entire estate according to the tenor of his lease. 1 Wash. on Real Prop. 342.

A leading case on this subject is, Parks v. The City of Boston, 15 Pick. 198. That was a proceeding by a landlord to obtain an assessment of damages for a part of certain demised premises which had been taken by the city for the purpose of widening a street. At the trial the lease was proved by the city, and it was thereupon insisted that the plaintiff should not recover the full value of the land, for the reason that he was still entitled to rent from his tenant during the residue of the term. The court, however, instructed the jury that a part of the land having been taken by law for the use of the public, without the consent of the landlord or tenant, the lease was thereby determined, and the landlord could not compel the tenant to pay such rent. This instruction was held to be er-

roneous, and in the opinion of the court delivered by Chief Justice Shaw, the law is laid down as follows : "But upon what principle can it be mantained, that a lessee under such circumstances would be exempted from the payment of the stipulated rent. The lessee takes his term, just as every other owner of real estate takes title, subject to the right and power of the public to take it, or a part of it, for public use, whenever the public necessity and convenience may require it. Such a right is no incumbrance; such a taking is no breach of the covenant of the lessor for quiet enjoyment. The lessee then holds and enjoys exactly what was granted him, as a consideration for the reserved rent, which is the whole use and beneficial enjoyment of the estate leased, subject to the sovereign right of eminent domain on the part of the public. If he has suffered any loss or diminution in the actual enjoyment of its use, it is not by the act of sufferance of the landlord; but it is by the act of the public, against whom the law has provided him an ample remedy. If he is compelled to pay the full compensation for the estate actually diminished in value, this is an element in computing the compensation which he is to receive from the public."

The case of Patterson v. the City of Boston, 20 Pick. 159, was brought by a tenant for an assessment of damages for a portion of his premises taken at the same time as in the preceding case, to widen the same street. Substantially the same instruction was given as in that case, and the court on reversing the judgment, held that the lease remained in force, and that the tenant continued liable for rent, and for the performance of his covenants, the same as though no part of the estate had been taken for the public improvement.

In an earlier case in Massachusetts, Ellis v. Welch, 6 Mass. 246, a tenant sued his landlord in covenant, alleging as a breach of the covenant for quiet enjoyment, that a portion of the demised premises had been taken by the selectmen of the City of Boston, for the purpose of widening a street, whereby he had not been able to hold and occupy said premises, but had been lawfully amoved, ejected and ousted therefrom. The court, in holding that the widening of the street was no breach

City of Chicago v. Garrity.

of the covenant, says: "All deeds are to be construed agreeably to the intent of the parties; and in a lease or conveyance containing a general covenant for quiet enjoyment, it must be presumed that the parties had in view evictions, entries or disturbances, to be made by virtue only of existing rights, and not of rights afterwards to be acquired. For these it cannot be presumed, from the general words of the covenant, were contemplated. Now the interruption complained of is an easement acquired by the public after the execution of the lease, and the authority of the selectmen to locate and establish a town way when necessary, cannot be considered as an existing incumbrance. Neither can the prerogative of the public to convenient ways on the lands of individuals be deemed an existing right within the intention of the parties to the lease. For the lessor holds the land subject to this prerogative; and so also do the lessees their term, because it is one of the incidents of the tenure, by which all the lands in the state are holden." And, again, "In this case, therefore, the plaintiffs have no occasion to resort to the defendant for recompense, as the same law by which the easement, of which they complain, is authorized, has provided for them a remedy against the town."

In Folts v. Huntley, *supra*, Mr. Justice Nelson, discussing the same question, says: "It is contended that the diversion of the creek by the Canal Commissioners, to be used as a feeder to the Erie Canal, being under the authority of law, is to be considered in the nature of an eviction by paramount title, and, therefore, a bar to suit for rent, or for the breach of any other covenant. The term, demised, in the lease, undoubtedly implied a covenant for quiet enjoyment, at least during the life of the lessor, and eviction under a superior and lawful title, of the whole or any part of the demised premises, would constitute a valid defense. It is obvious, however, for many reasons, that this act of the Canal Commissioners, though lawful, is not an eviction, within the meaning or spirit of the term, and can afford no defense to the suit. It is not inconsistent with, but entirely independent of, a perfect right and title in the plaintiff to lease the demised premises, and

rested upon the great public considerations, paramount to all and every title to the property."

In Foote v. the City of Cincinnati, 11 Ohio, 408, the Supreme Court of Ohio, upon the authority of the cases above cited, held that the liability of a lessee to pay rent subsists, notwithstanding the leasehold has been appropriated for a street, and that he is entitled to a compensation from the city for the liability.

The Supreme Court of Pennsylvania in Workman v. Mifflin, 30 Penn. St. 362, in deciding that the rent is not apportioned by taking a part of the lot out of which rent is reserved for a public highway, say: "True, rent is sometimes said to be an incident of enjoyment, and from this it is argued that, inasmuch as a part of the enjoyment of the lots has been taken away, the tenant's liability for the rent has ratably diminished. But when it is said that rent is incident to enjoyment, that enjoyment only is meant the right, to which the tenant has obtained from the landlord. If the landlord withhold or take away the thing he has granted, it is equivalent to a partial eviction.    A tortious disseisin of the tenant by a stranger, however, has never been held to relieve the tenant from his covenant to pay rent, though it takes away the enjoyment of the thing demised ; and if a house be destroyed by fire, the tenant who has covenanted to pay rent is at law still liable, notwithstanding his enjoyment is entirely lost.   *   *   * In the case now before us, as we have seen, the landlord never stipulated that no part of these lots should ever be taken for public use, and the tenants acquired no right to such an exemption.   The sequence of this is, that no enjoyment of the thing demised, as the consideration for the rent, has been taken away, or even diminished by the appropriation of a part of the ground for a public highway."

Substantially the same principles are held in the following cases.   Dyer v. Wightman, 66 Penn. St. 425; Wilson v. Getty, 57 Id. 271;   Peek v. Jones, 70 Id. 85;   McLaren v. Spaulding, 2 Cal. 510;  Frost v. Ernest, 4 Whart. 86.

It clearly results from these authorities, that the estate of a tenant for years is liable to be taken by the public by virtue of

City of Chicago v. Garrity.

the right of eminent domain, upon precisely the same terms upon which any other estate in lands may be taken, viz: compensation by the public for the property so taken. The value of that of which the tenant is deprived—the possession for the residue of the term—is the basis upon which his compensation is to be estimated. The power of eminent domain takes the land subject to public use, not the contract by which an interest in the land is held, but the land itself. Whether the consideration has been paid, is a question between grantor and grantee. The compensation for which the public is liable, must go to those who are entitled to the property itself, in the proportion of their several interests.

There can be no just ground, then, for holding that the condemnation of all or part of the demised premises can, as between landlord and tenant, operate as an extinguishment of the lease, either in whole or in part; no such rule is attempted to be applied to any other estate in lands. As between grantor and grantee, the grant is not extinguished, though a part or all of the purchase money may be in arrears. A mortgage, as between the parties thereto, is not invalidated, although the money for which it was given is unpaid, or has not even matured.

A tenant is entitled to receive from the public full compensation for so much of his leasehold estate as is appropriated to public use. He thereby obtains complete indemnity for his loss, and there is no reason why he should be excused from performing the covenants of the lease. He is deprived, it is true, of the possession of the premises, but receives its equivalent in money, and accordingly, it is but just that he should be held to the payment of the rent, which is the consideration for which the term was granted him.

The court below, in his instructions to the jury, took a different view of the law, and held, in substance, that upon the condemnation of the property, the liability of the tenant to pay rent was extinguished, and that as a consequence, the damages to be awarded the landlord, were to be diminished by reason of the existence of the leasehold estate, only by such amount as the evidence showed that the actual rental value of the prem-

ises exceeded the rent reserved. It is clear that these instructions, if obeyed by the jury, must have resulted in the assessment of a larger sum in favor of the landlord than was justly his due. No instruction seems to have been given applying a corresponding rule to the damages to be awarded the tenant, and we have no means of ascertaining with certainty the principles upon which they proceeded in making such award.

Upon the first presentation of the case in this court, it was suggested that the error in the instructions only affected the rule of apportionment of damages between landlord and tenant, and was not an error of which the city, the only party assigning errors, could complain. We were, at first, disposed to take this view, but upon mature reflection, we have reached the conclusion that it cannot safely be maintained. Were it required by a statute, as it is by that of some other states, that the jury, in assessing damages, should first ascertain the total value of the property to be taken, entirely without reference to the rights of the different claimants, and then distribute the damages among the various parties entitled thereto, according to their respective interests, it might well be said that an instruction in relation to the relative rights of the claimants, although erroneous, could not affect the aggregate amount of damages to be paid by the city, and would be no ground of complaint on its behalf. No such practice, however, is enjoined in this state by statute, and even if it should be held, in the absence of statutory regulation, to be a correct mode of procedure, it was not adopted by the court below in this case.

The damages awarded the landlord and tenant, respectively, would each seem to be the result of an independent assessment, and there can be no assurance that damages have not been assessed which, in the aggregate will exceed the entire value of the property taken, so long as the assessment was based upon principles which are essentially erroneous.

The rule laid down in the instructions, as applicable to the landlord, was more favorable to him than it should have been, and as we may fairly presume, resulted in too large an assessment in his favor. The same rule applied to the tenant, would

City of Chicago v. Garrity.

have given him less than he was entitled to.    In fact, we see no way in which a proper application of the principles of the instructions to the evidence in the case, could have resulted in more than nominal damages to the tenant for "his leasehold interest in the lot and buildings."    The rent reserved was $60 per month, and the evidence entirely fails to show, with any degree of certainty, that the rental value of the property exceeded, to any extent, the stipulated rent.    If, then, the effect of the proceedings was to relieve the tenant from liability to pay rent, and the rental value of the premises is not shown to have been greater than the payments from which he was thus discharged, it is difficult to see how his damages on that score could be more than nominal.    The jury, however, awarded him, for his leasehold interest in the part of the lot taken and the buildings and improvements thereon, the sum of $1,600. In view of this result, it cannot be said that the jury may not have been misled by the instruction to the injury of the city.

It is, in fact, difficult to see how this finding in favor of the tenant can be sustained, when tested by both the evidence and instructions.    Either the jury disregarded the instructions so as to apply to the tenant principles different from those which were thereby applied to the landlord, or they must be held to have entirely misconceived the evidence.    Whichever of these suppositions is true, their verdict ought not to stand.

It is urged, however, in support of the verdict, that there was evidence tending to show that by the condemnation of the property, Cudney would be not only deprived of his leasehold estate, but would lose the good will of the business which he had established and was carrying on upon the premises, and that in the assessment of damages, the jury were warranted in taking into consideration the interruption of an established business, and the destruction of the good will of such business, consequent upon the condemnation.    A complete answer to this position is, that the jury have not, by their verdict, assumed to award any damages for the interruption or destruction of the business or of its good will.    The verdict awards Cudney damages in two items, viz.: for his leasehold interest in the lot and buildings, $1,600, and for damages

to fixtures and improvements, $200. Neither of these items can be said to include any damages growing out of the business. If the jury were of the opinion that the evidence established any damages of that character, they might, possibly, have assessed the same in a separate item, but we see no principle upon which evidence on that question can be resorted to in support of the assessment of damages for other items of property taken by the proceedings. Whether there was evidence tending to show that Cudney had acquired the good will of a business, in the legal sense, of which he will be deprived, and that such 'good will is of any value, and whether he can be entitled to compensation therefor in this proceeding, are questions, which, as we view the case, do not arise and need not be discussed.

Various other'questions are raised by counsel, but as the error in giving the foregoing instructions necessitates a reversal of the judgment as to both appellees, we do not feel inclined to consider them. The judgment will be reversed, and the cause remanded.

Judgment reversed.