## No. 12,771.

### J. H. HINRICHS VS. THE CITY OF NEW ORLEANS.

While the taking of part of the property leased for a purpose of public utility gives the lessee no action in damages against the lessor, he not being in fault, the lessee is entitled to a diminution of rent. Civil Code, Art. 2697.

When the city of New Orleans becomes a lessor, it is subjected to the same obligations imposed by law on those who enter into contracts of lease, hence the lessee from the city of the revenues of the public markets deprived of part of the revenues, because a portion of the space on which the stalls in the market are erected is taken for a public necessity—*i. e.*, the widening of a street, the city must allow the lessee a diminution of rent.

The lessee entitled to a diminution of rent does not lose his right, because under the menace of dispossession under the extra-judicial power claimed by the lessor under the contract, the lessee pays under protest rent becoming due after the right to the diminution accrues.

The lessee can urge his demand for diminution of rent in a separate suit, or by reconvention, if sued on the rent notes. C. P., Arts. 374, 377.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*Farrar, Jonas, Kruttschnitt & Gurley* and *J. V. Guillotte* for Plaintiff and Appellant.

*Samuel L. Gilmore,* City Attorney, and *W. B. Sommerville,* Assistant City Attorney, for Defendant and Appellee.

Argued and submitted May 20, 1898.
Opinion handed down June 30, 1898.
Rehearing refused December 5, 1898.

The opinion of the court was delivered by

MILLER, J.   This is an appeal from the judgment against the plaintiff on his demand for a diminution of the rent stipulated by him to be paid for the lease of the public markets of this city and for the deduction of amount claimed by him from the amount of the rent note last maturing and in the hands of the city when plaintiff sued.

In April, 1893, the city leased to the plaintiff for three years the public markets, or rather the revenues of the markets, for the price of one hundred and ninety thousand two hundred dollars, one thirty-sixth part paid on the signing of the contract and the remainder in thirty-five equal instalments, represented by that number of the lessee's promissory notes, payable on the 15th of each month of the three years term of the lease.   The lessee entered into possession, made the cash payment, furnished the notes, and paid all except that last maturing, in April, 1896.   The city in November, 1893, found it necessary to widen one of the adjoining streets; in doing this it encroached on the space occupied by three of the markets, plaintiff alleges, thereby depriving him for the unexpired term of his lease of sixty-four stalls then rented by the vendors of commodities brought to the market for sale and from which stalls the plaintiff derived, under his contract, the customary market dues.   The petition claims that this taking of a part of the market for a public purpose, thereby causing the loss to plaintiff of the revenues of sixty-four of the stalls, entitles him to a diminution of the rent stipulated to be paid under his lease of the market revenues, and for that diminution, fixed by the petition at ten thousand seven hundred and thirty-six dollars and thirty-four cents, he claims judgment and the

further decree that this sum be deducted from the amount of the last rent furnished by him and maturing in March, 1896.

The city excepted that the petition disclosed no cause of action, on the grounds that no act of the lessor gives rise to an action for diminution of rent, nor can such action be maintained after rent is paid; that the contract made part of plaintiff's petition prohibits stalls on the sidewalks, and the petition shows that the sixty-four stalls were on the sidewalk; that in the contract the plaintiff surrendered and waived any right of set-off or compensation based on any claims or demands he might have or thereafter might accrue to him against the city, this stipulation referring to his rent notes; and that the injury arising from the widening of a street was *damnum absque injuria*.

Our law provides that if the thing leased be destroyed by a fortuitous event or is taken for a purpose of public utility, the lessee may demand either a diminution of the rent or the revocation of the lease, but in either case the lessee is denied any claim for damages. Civil Code, Art. 2697. The article withdraws the contract of lease from the operation of any rule that might be supposed to extend the responsibility of the lessor for damages, when the failure of the lessor to fulfil his contract is due to to the expropriation of the thing leased or fortuitous event. But the Code distinguishes between damages and diminution of the price. It refuses the one, but gives the other, *i. e.*, the diminution of the price. It would be contrary to reason that the lessee should continue liable for rent when the thing leased has perished by a fortuitous event, or the equivalent result is produced by the taking of the thing leased for the public necessity, subject to which all property is held. We understand in this case that, recognizing the law, the plaintiff makes no claim for damages, but claims the diminution of the rent. This Art. 2697 of our Code does not seem to need any aid from the French authorities. We have given attention to those cited by the defendant. They affirm that damages are not allowed the lessee against the lessor, when he is not in fault and the thing leased has perished, or in whole or in part is taken for the public necessity; and the authorities equally affirm tha. diminution of the rent is due the lessee when the fortuitous event or expropriation has deprived him of the possession of the leased premises. The defendant's exception is on the theory that the suit is for damages when the law gives none, unless the lessee is in fault, or if the

suit is viewed as one for diminution of rent the law gives no such remedy for any act of the lessor. In determining the character of the plaintiff's suit we must look to the substance of his demand, and not the mere form of expression in the petition. The allegation that the city was in fault for destroying the stalls in the market is accompanied with the averment substantially that the street was widened because of the public necessity—*i. e.*, the taking of. the thing leased for the purpose of public utility. We view the suit as one for diminution of rent for the cause specified in the Code.

In our opinion another ground of defence that these stalls were prohibited on the sidewalk can not be maintained. The stalls were under the roof of the market, had stood there for years, and were deemed a part of the markets. In the contemplation of both parties it is our conclusion the revenues to be derived from stalls under the roof passed to the lessee.

In our appreciation the stipulation that the lessee waived the right to urge offsets or demands in compensation against the rent notes must be restricted to demands reasonably to be presumed intended by the parties. The expropriation of the markets was surely not anticipated. If the stipulation under consideration could be deemed to waive the lessee's demand for relief in a case like this, the consequence would be to deny him when sued the right to urge as a defence that the thing leased, for the enjoyment of which he gave the notes, had perished, or had been expropriated, the day after, it might be, the lease was signed. The argument that gives that effect to the stipulation as to the demands or offsets waived, it seems to us, must be deemed fallacious. We can not hold that because plaintiff waived the right to urge offsets or demands or compensation against the notes, that therefore he can not claim the diminution of rent the law accords him when the thing leased in part has been taken for a purpose of public utility.

Again the exception affirms that the plaintiff has lost all claim to the diminution for the eviction from the stalls by continuing after that event to pay rent. Under the contract any failure to pay the rent at the stipulated periods, whatever the cause, subjected the lessee to the extra-judicial dispossession of the leased premises by the city. It is in proof the plaintiff sought an injunction to protect himself from the encroachment on the stalls by the widening of the street, but pending the preliminary rule for the issue of the writ the

city removed the stalls. If after this resistance to that which he conceived to be the invasion of his rights, the plaintiff continued to pay always under protest, at least it can not be said he acquired in that invasion by voluntary payments. In this connection our attention has been directed to the line of authority that distinguishes the voluntary payment from that brought about by compulsion about to be applied with serious injury to the party who pays to avoid such consequences. If the plaintiff had a just cause for a diminution of his rent, the insistence of the city of full payment is to be viewed as an illegal demand accompanied by the menace implied or express of that coercion given the city by the contract. The general proposition that payment under coercion from illegal demand will not prevent recovery of the money so paid, is, we think, too well settled to need discussion. In other phases involving that principle our courts have affirmed that acts done under coercion do not involve the surrender of rights supposed to be affected by such acts, and in the text-books and decisions the principle is affirmed. Verges vs. Gonzales, 33 An. 412; Jackson vs. Michie & Murdock, 33 An. 723; Factors and Traders Insurance Company vs. Harbor Protection Company, 37 An. 233; Cuny vs. Dudley, 6 Rob. 77; Taylor vs. Bowker, 111 U. S. 28. We do not think that any acquiescence in the removal of the stalls can be imputed to plaintiff on the ground of voluntary payment of the rent.

The argument for the defendant insists that when the defendant was deprived of the stalls he was required to choose between the revocation of the lease or diminution of 'the rent, and by continuing to pay rent he waived all right to diminution. We infer by this this is meant that he should at once have sued for the diminution. If the plaintiff became entitled to a diminution, it seems to us he might well urge it as a defence when sued upon the notes. In a case in which the lessee resisted payment on the rent notes on the ground of the tortious act of the lessor in dispossessing the defendant of the premises, the court held he could use that as a shield that he might have employed as a weapon. The Orleans Theatre Insurance Company vs. Lafferanderie, 12 Rob. 472. In that case, it is true, there had been no payment of rent after the tenant's dispossession, but unless constrained by authority, we do not perceive the basis on which we can hold the right to the diminution was lost, because the defendant did not once sue for the diminution. The French

authorities to which defendant refers affirm the lessee must claim the diminution. " Si la chose loué ne périt qu'en partie, le preneur peut réclamer une diminution de prix," 3 Moulon, p. 294. To the same effect, we think, are the authorities from other authors cited in defendant's brief. That the lessee should make his election to claim the diminution when he proposes to remain, and not demand the revocation of the lease, we can appreciate. That requirement was fulfilled. The lessee made the election, claimed the diminution and renewed it in effect on every maturity of the rent notes. The defendant refused to allow the diminution and thus each party stood on his legal rights. If the removal of the sheds entitled the plaintiff to the diminution of the rent, it seems to us he did not lose his right merely because he did not at once make it the basis of an action against the lessor. The plaintiff owed when the eviction occurred a far greater amount than the diminution he claims. He defers his demand until the last rent is about maturing. He might have asserted his demand by way of reconvention if suit had been brought on his rent notes. But if no such suit is brought, or if brought the defendant does not choose to reconvene, he may bring his independent suit. C. P., Arts. 374, 375, 376. In our opinion, plaintiff is not precluded from his present demand either by paying the rent, or by acquiescence in the removal of the stalls, and that he can avail by this suit of the defence he could have urged if sued on the note he had reconvened. If entitled to the diminution, the adequate relief is to diminish to the extent of his demand the rent claimed on his last note. That is the relief he seeks.

The defendant urges that the stalls having been removed because of the widening of the street, a public necessity, the plaintiff's loss, if any, is *damnum absque injuria.* In our view, when the city enters into a contract of lease it incurs precisely the obligations that would be imposed on an individual. On a line somewhat similar, the United States, with respect to its contracts, is held to derive no advantage from its sovereignty when the courts are called on to construe or enforce rights arising out of such contracts. The law when this lease was made gave the lessee the right to a diminution of the rent, if the thing was taken for a purpose of public utility, and to that obligation the defendant, as any other lessor, is subjected.

We are not enabled to adjust the diminution to which the plaintiff is entitled on any basis the record exhibits. The rents which plain-

tiff contends he would have realized, if not dispossessed of the stalls, does not, in our view, fix the diminution of the rent to which the law entitles him. Our judgment is limited to affirming his right of action.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be reversed and avoided, and it is now ordered, adjudged and decreed that, affirming plaintiff's right of action and that the defendant's exception be overruled, it is ordered, adjudged and decreed that this cause be remanded to the lower court to fix the diminution of rent to which plaintiff is entitled, to be deducted from the last maturing rent note furnished for the rent, and that defendant pay costs.

NICHOLLS, C. J., and WATKINS, J., dissent.