NORA TODD ELLIOTT ET VIR, Petitioners

V.

EDWARD JOSEPH, Respondent

No. A-8416. Decided October 18, 1961
Rehearing Denied and Dissenting Opinion Filed December 20, 1961
351 S.W. 2d 879

JUSTICE SMITH, joined by GREENHILL and HAMILTON, JJ., dissenting.

*Hardy Hollers,* Austin, for petitioner.

*Cofer & Cofer, Douglass D. Hearne,* with above firm, Austin, for respondent.

MR. JUSTICE CULVER delivered the opinion of the Court.

In this suit in the district court against Nora Todd Elliott and her husband, Roy C. Elliott, Edward Joseph sought a declaratory judgment to determine what amount of rent he is obligated to pay and an injunction to restrain the Elliotts from interfering with his enjoyment of the leasehold estate which he holds upon land owned by them.

In 1946 Joseph and the Elliotts entered into a written contract by the terms of which the Elliotts leased to him a certain

tract containing 12.5 acres with the option of extending the lease until March 31, 1966, at the monthly rental now in effect of $166.67. Joseph is now and has been for a number of years operating a drive-in moving picture show on the premises.

In October of 1959 the City of Austin filed proceedings to condemn 3.87 acres of this tract for the purpose of street widening. Joseph contends that under the terms of said lease and the law of the State of Texas, he is entitled to have the rental apportioned pro tanto and reduced accordingly and tendered the sum of $115.00 monthly rental. The Elliotts by cross-action asserted that Joseph was obligated to pay the contract rental of $166.67 per month without any proportionate reduction, prayed for judgment for accrued rentals at that rate, and sought rescission of the lease contract by reason of default.

The trial court found that the Elliotts are entitled to recover the full rental agreed to in the contract without any reduction on account of the taking by the City of Austin of the 3.87 acres and entered a take-nothing judgment against Joseph. The court also denied Elliotts' claim for rescission of the least contract.

The Court of Civil Appeals on its own motion held that the same issue presented in this case is to be determined in the county court in the presently pending condemnation proceedings and ordered this cause abated until final disposition of the condemnation suit, invoking the rule that after the county court has acquired jurisdiction in a condemnation suit no other court is authorized to interfere with its proceedings. One justice dissented (345 S.W. 2d 297). All parties applied for writs of error insisting that the rule invoked by the Court of Civil Appeals is not applicable here. With that contention we agree.

■ A condemnation suit in the county court is a special proceeding and determines only the issues of the right to condemn and the amount of the damages. The trial in the county court is a de novo appellate proceeding. State v. Nelson, 160 Texas 515, 334 S.W. 2d 788.

■ The county court has no power to determine the rights of the parties under the lease or to reduce the rent or to give a judgment for or against the Elliotts for the amount of rent claimed by them. It is true that the question of law as to whether or not a pro tanto abatement of rent is to be allowed upon a partial taking of the leasehold by condemnation would have a bearing upon the apportionment of damages between the land-

lord and tenant in the condemnation proceeding but that question will not be and cannot be resolved in the condemnation suit. What the county court will determine, so far as the tenant is concerned, is the diminished value of the lease. City of Pasadena v. Porter, 201 Cal. 381, 257 P. 526, 53 A.L.R. 679, holds:

"A proceeding for condemnation of private property under the Street Opening Act is .a special statutory proceeding. The court sitting therein has no equitable jurisdiction, and accordingly, has no power to reform or revise the lease in question, nor to determine to what extent the covenant to pay rent shall be affected, if at all."

The authorities relied upon by the majority of the Court of Civil Appeals do not support their conclusion that the same issue is involved in the county court condemnation proceedings and in this suit.

In Compton v. Texas Southeastern Gas Co., Texas Civ App., 315 S.W. 2d 345, writ refused n.r.e., plaintiff could not maintain her suit for damages in the district court caused by the laying of a pipe line through her property by the defendant because that was exactly the issue to be determined in the pending condemnation suit in the county court. Likewise in Pickens v. Hidalgo County Water Control & Improvement District, Texas Civ. App., 284 S.W. 2d 784, no writ history, and in Texas Pipe Line Co. v. Ennis, 127 Texas 470, 93 S.W. 2d 148, the only issue presented was the amount of damages that would be suffered by the landowner as a result of the taking under the power of eminent domain. The county court was empowered to grant full relief for all damages suffered and consequently the landowners could resort to no other forum.

■ There is here an actual present controversy between the parties. The Elliotts contend in their cross-action that irrespective of any condemnation proceedings they are entitled to the payment of the contractual rental and asked judgment for the amount due. They also claimed the right to rescind because the rent had not been paid. Joseph on his part contended that he was entitled to a pro tanto abatement of the rent and tendered into court the rent reduced proportionately on an acreage basis. These issues could not be decided elsewhere than in the district court.

The landmark case of Cleveland v. Ward, 116 Texas 1, 285 S.W. 1063, is not applicable. In that case one of the parties had filed suit in the district court of Johnson County to cancel cer-

tain notes and the deed of trust given to secure the same. The other party had filed suit in the District Court of Dallas County to foreclose under the same deed of trust. The only question involved was the validity of the notes and deed of trust and the right of foreclosure. Both courts had potential jurisdiction. Very naturally it was held that two courts could not at the same time possess the power to make a final determination of the same controversy between the same parties, but that is not the situation we have here. The Court of Civil Appeals erred in ordering that this cause be abated until final disposition of the condemnation suit.

■ We now come to a consideration of the question of law presented here, namely, when there is a partial taking of a leasehold estate by condemnation and the remaining portion is susceptible of occupation whether or not the contractual monthly rental is to be abated pro tanto for the part taken during the remainder of the time of the lease. Although many courts in other jurisdictions have considered and passed upon this problem and a number of able text writers have expressed their views, we find that the question has not been decided by the Texas courts. A review of the authorities reveals that a large majority of these decisions hold that the rentals are not abated in this situation, but rather the tenant is obligated to continue the payment of the rentals provided in the lease contract and must look to an apportionment of the damages assessed against the condemning authority based on the reduced value of his lease. We are inclined to follow the majority concept.

The general rule is that when the whole of leased premises is taken under eminent domain proceedings, the lease is terminated and the tenant is no longer liable to pay rent. See annotations 43 A.L.R. p. 1176, 3 A.L.R. 2d p. 328. Joseph argues that the same rule should be applied where only a portion of the premises is taken and that there is no reasonable ground to make a distinction beteween the two classes of cases. A few courts have so held.

In Biddle v. Hussman (1856), 23 Mo. 597, after condemnation by the City of St. Louis of a part of the premises leased to Hussman, the owner sued the lessee, Hussman, for the rent for the entire premises. The court held that as to the part appropriated to public use the rent was extinguished. The same result was reached in Kingsland v. Clark (1856) 24 Mo. 24, and likewise in Barclay v. Picker, 38 Mo. 315.

In Board of Levee Commissioners v. Johnson, (1889) 66 Miss. 248, the taking of a portion of leased premises under the power of eminent domain was held to operate as an apportionment of rent and dissolved the relation of landlord and tenant pro tanto. Additionally, there are a number of text writers who urge the adoption of the minority rule. Lewis on Eminent Domain, Sec. 438; 3 Tiffany on Real Property, 3rd ed. Sec. 904, pp. 565, 566; 1 Orgel on Valuation Under Eminent Domain, 2nd ed. Sec. 121, p. 522. The converse is to be found in 1 Washburn on Real Estate, 5th ed., ch. 10, Sec. 6, p. 558, where the following statement is made:

"* * * But the better rule, and the one believed to be adopted in most States, is that such a taking operates, so far as the lessee is concerned, upon his interest as property for which the public are to make him compensation, and does not affect his liability to pay rent for the entire estate according to the tenor of the lease and this extends to ground rent; such taking does not abate any part of the rent due."

Joseph quotes from 2 Nichols on Eminent Domain, pp. 42, 43, Note 60, the rule as follows:

"Conversely, as the tenant is not entitled to an abatement of his rent if he has been dispossessed by a disseizor, or by the public enemy, or if the premises are destroyed or rendered untenantable by earthquake, lightning, floods or fire, he remains liable in the same manner for the full amount of a rent when a portion of the leased premises are taken by eminent domain,"

but urges that the premises laid down in that statement is not the law of abatement in this state. It is the law here that where the estate from which the rent issues ceases to exist the landlord is not entitled to recover rent for the remainder of the period. This was the case in Norman v. Stark Grain & Elevator Co., Texas Civ. App., 237 S.W. 963, error refused, and Behan v. Ghio, 75 Texas 87, 12 S.W. 996. In the former case the rented elevator collapsed and was rendered totally unfit for the storage of grain that was the only purpose for which the elevator could be used by the express terms of the lease. On the other hand the destruction of a building on leased premises by fire or other catastrophe does not relieve the tenant against the obligation to pay rent unless it is so stipulated in the lease. Japhet et al v. Polemanakos, Texas Civ. App., 160 S.W. 416, writ dismissed, and see cases therein cited.

The objection raised by the text writers to the majority rule, that the rent is not to be reduced where a part only of the leasehold is taken, is that it works an inconvenience and hardship on the landlord. As said by one writer in 29 Amer. Law Rev. p. 354 (1895):

"It is easy to conceive of instances, where, under this rule, the tenant would receive a very considerable amount of the landlord's damages in order that he may go through the idle form of repaying it in installments in the shape of rent, and at the same time the landlord will be obliged to look to the solvency and order of the tenant in its repayment."

The landlord may protect himself by providing for the termination of the rent obligation if the property is condemned. Appeal of Scholl, 292 Pa. 262, 141 A. 44. In some states the statute provides for a proportionate reduction. Matter of Daly, 29 App. Div. 286, 51 N.Y.S. 576; McCardell v. Miller, 22 R.I. 96, 46 A 184; Hinricks v. New Orleans, 50 La. Ann. 1214, 24 So. 224.

Many of the decisions in support of the majority rule take note of the early Missouri and Mississippi cases but refuse to adopt the result there reached.

In City of Chicago v. Garrity, 7 Ill. App. 474 (1880), the matter was first noticed in the State of Illinois. The court there recognized that the decisions of other states were not entirely harmonious, yet after considering the three Missouri cases decided to follow the weight of authority in favor of the principle that the tenant remains liable for the entire rent notwithstanding the condemnation of a portion of the property to public use. Thereafter that jurisdiction has consistently adhered to this position. See Stubbings v. Village of Evanston, 136 Ill. 37, 26 N. E. 577; Corrigan v. City of Chicago, 144 Ill. 537, 33 N. E. 746; Yellow Cab Co. v. Stafford-Smith Co., 320 Ill. 294, 150 N. E. 670, 43 A.L.R. 1173.

Gluck v. Baltimore, 81 Md. 315, 32 A. 515 (1895), a condemnation proceeding by the City, held that the taking of a portion of leased land does not operate to abate any portion of the rent reserved, nor will it apportion the rent, and the tenant should be allowed damages for the decreased value of the premises. In that case the court took note of the argument that this rule would or might in many instances, result in loss to the landlord. The answer is given that this is a mere suggestion of a possible hardship, but that a sound principle ought to be applied without

reference to ulterior results. The fact that it may operate in some instances with apparent or even real hardship does not indicate that it is inherently erroneous.

The plaintiff sued for rent due under a lease contract in Olson Land Co. v. Alki Park Co., 63 Wash. 521, 115 P. 1083 (1911). The court upheld the rule that a tenant when part of his leased premises is taken under the power of eminent domain cannot claim an eviction by the landlord nor be released from the payment of rent.

Also F. W. Woolworth Co. v. Berlin, 82 N.H. 153, 130 A. 741 (1925), follows the general rule, though taking note of Biddle v. Hussman and Levee Commissioners v. Johnson, supra.

Earlier cases holding to the same effect are Parks v. Boston, 15 Pick. (Mass.) 198 (1838); Patterson v. Boston, 20 Pick. (Mass.) 159 (1838), Workman v. Mifflin, 30 Pa. 362 (1858).

In Leonard v. Auto. Car Sales and Service Co., 392 Ill. 182, 64 N.E. 2d 477, 163 A.L.R. 670, writ cert. den., 327 U.S. 804, 90 L. ed. 1029, 66 Sup. Ct. 968, the entire leased property was taken temporarily by the United States for a definite period of time short of the term of the lease, but even in that situation the lessee was not relieved of liability for rent. The court observed that "When it is remembered that every lease possesses a double aspect, being both a conveyance and a contract, a ready explanation may be found for the view that a lessee may cease to be entitled to the possession yet remain bound by his contractual obligation to pay rent."

■ There is also, we think, a practical procedural reason for not adopting the very logical minority rule. Article 3265 bearing on rule of damages on condemnation suits, in Section 1, provides that the commissioners shall assess the actual damages that will accrue to the owner. Section 3 provides that where only a portion of the real estate is condemned the commissioners shall estimate the injuries sustained and the benefits received by the owner. The term "owner" in this sense includes a lessee for years as well as any other person who has an interest in the property. Houston North Shore Ry. Co. v. Tyrrell, 128 Texas 248, 98 S.W. 2d 786, 108 A.L.R. 1508. The amount of rent is a factor in determining the damages suffered by the lessee in the taking of a portion of his lease, but it is not the only element. Frankfurt v. Texas Turnpike Authority, Texas Civ. App., 311 S.W. 2d 261, no writ history; State v. Parkey, Texas Civ. App., 295 S.W. 2d

457, wr. ref. n.r.e. The rules applicable to the condemnation of a fee title apply equally to the condemnation of a part of a leasehold interest. Brazos River Conservation & Reclamation District v. Adkisson, Texas Civ. App., 173 S.W. 2d 294, writ refused.

Possibly in this case an abatement of the rent pro tanto might work a complete satisfaction of this lessee's claim for damages, but probably not in all situations.

Although Orgel, supra, concedes that even if the lessee is relieved from his obligation to pay the rentals, where only part of the premises had been taken, the problem of fair apportionment is simplified but by no means solved.

Since under our condemnation procedure all persons having any interest in the subject matter must be made parties in order for the condemning authority to obtain complete title, the adoption of a rule permitting the abatement of rent in the district court would probably tend to hamper and disrupt the statutory condemnation processes and might require under some situations an abatement of the condemnation in the county court until the lessee's claim of pro tanto abatement could be determined in the district court.

We therefore conclude that while the minority rule makes a logical approach to the solution of this troublesome problem, and while valid reasons may be assigned in support thereof, nevertheless in considering all aspects of the question the majority rule should be followed.

The judgment of the Court of Civil Appeals is therefore reversed and that of the trial court is affirmed.

Opinion delivered October 18, 1961.

ASSOCIATE JUSTICE SMITH, dissenting.

The dissenting opinion delivered on October 18, 1961, is withdrawn, and the following substituted therefor:

I respectfully dissent.

The question involved has never been expressly decided in Texas. The Court here seems to attach some weight to what it deems to be the majority rule. It is of no particular significance as to which is the majority rule, and which the minority rule,

when the question is an open one in this State. We are not compelled to follow the majority rule which, if followed, will bind the tenant to pay rent on premises after he has been permanently ousted therefrom. Texas should adopt a rule which will be in accord with our Texas decisions on Landlord and Tenant. Where the so-called minority rule is followed, the obligation to pay rent is extinguished pro tanto and the present value of the rent apportioned to the part taken is paid directly to the lessor as in the taking of the whole property. See American Law of Property, Sec. 3.55, p. 291.

In Dyer v. Wightman, 66 Pa. 425, the court placed the ground for the extinguishment of the rent on the theory that equity will not give the award for the value of the rent to the tenant because that would leave the landlord insecure, and hence the equitable thing to do is to give the sum to the landlord and extinguish the tenant's obligation to pay rent.

Regardless of where equity should lie, it is difficult for me to see why the rule applied on a total taking would not also be applicable to a taking of a part of the premises. By applying the rule to a partial taking, we would have a pro tanto abatement of the rent.

The adoption of this sensible and most equitable rule would not in the least complicate statutory condemnation proceedings in cases where landlord and tenant are involved.

A proceeding for condemnation of private property for public use is a special statutory proceeding. The court sitting in such proceeding has no equitable jurisdiction, and accordingly has no power to reform or revise the Elliott-Joseph lease, nor to determine to what extent the covenant to pay rent shall be affected.

The payment of rentals, of course, is a factor which must be considered in arriving at the fair market value of the lease. See Frankfurt v. Texas Turnpike Authority, 311 S.W. 2d 261. However, the apportionment of the rents is a problem of the law of Landlord and Tenant to be finally adjudicated in separate proceedings in a court of competent jurisdiction.

In 1 Orgel on Valuation Under Eminent Domain, 2d Ed. Sec. 121, p. 522, it is said:

"Where a contrary ruling is not required by the lease or by statute, it would seem to us far more reasonable to release

the lessee from his obligation to continue the rent payments, or partially to reduce it when only a part of the premises has been taken, leaving the remaining part still inhabitable."

The rule for which I contend has been adopted in other jurisdictions. However, if it had never been followed in any jurisdiction, I still contend that Texas should refuse to follow the harsh and inequitable rule followed by the so-called majority rule. Many times this Court has, in instances of divided authority, struck out on its own course. Since Texas is to adopt a rule, it would seem that our courts should be inclined to adopt the sensible, simplest, and most equitable rule.

ASSOCIATE JUSTICES GREENHILL and HAMILTON join in this dissent.

Opinion delivered December 20, 1961.