**FORT WORTH & D. S. P. RY. CO. v. JUDD et al. (No. 2967.)**

Court of Civil Appeals of Texas. Amarillo. Feb. 29, 1928.

Rehearing Denied March 21, 1928.

**1. Eminent domain ☞239—In determining damages due owner in condemnation proceeding after payment to tenant, submission on issues as to market value of owner's land taken and decrease in value of his other land held not erroneous as requiring finding to include tenant's damages.**

In determining amount of compensation due owner in condemnation suit by railroad after tenant had been paid for damages to leasehold interest, submission on issues of market value of land taken which belonged to owner and as to decrease in market value of other land owned by him *held* proper, in view of testimony, as against contention that finding of jury included tenant's damages.

**2. Eminent domain ☞238(6)—Where owner of land appealed from commissioners' award in condemnation proceeding, dismissal of tenant who was satisfied with his award held not error (Rev. St. 1925, art. 3266, subd. 6).**

Where owner of premises which were being condemned by railroad filed objections to award of commissioners and appealed to county court, trial court *held* not to have erred in dismissing from suit tenant who was satisfied with his award, since, under Rev. St. 1925, art. 3266, subd. 6, appeal by owner did not perfect appeal as to all parties, and effect of appeal was not to annul award of commissioners and require trial de novo as to all parties.

**3. Eminent domain ☞155—Owners of freehold estate and of leasehold interest have separate and distinct rights to damages in condemnation proceeding.**

In condemnation proceeding, owner of freehold estate and owner of leasehold interest to part of land have separate and distinct rights to damages to their respective interests.

**4. Eminent domain ☞177—Owners of freehold estate and of leasehold interest were properly joined in condemnation proceeding.**

Though claim of owner of freehold estate and that of owner of leasehold interest were separate and distinct in condemnation proceeding, such claimants were properly joined in same action.

**5. Eminent domain ☞157—Condemnor has no interest in apportionment of damages between claimants.**

Condemnor has no interest in apportionment of damages between various claimants.

**6. Eminent domain ☞147—Tenant for years may recover full damages to leasehold in condemnation proceedings, unless total damages exceed value of land; "owner."**

Tenant for years is "owner" of property in constitutional sense, and, as such, is entitled to share in compensation and to recover full damages to leasehold interest in condemnation proceedings, unless total damages awarded the several interests exceed value of land.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Owner.]

**7. Eminent domain ☞96—In condemnation proceeding, owner may recover as distinct item of damages cost of removing buildings.**

In condemnation proceeding, owner may recover, in addition to depreciation in value of his land, cost of removal of buildings and other improvements on land taken or too near proposed right of way, as distinct item of damages.

**8. Eminent domain ☞262(5)—Instruction that defendant must show value of land taken, depreciation in other land, and damages from moving improvements, if erroneous, held not prejudicial to condemnor, since issue of cost of removing improvements was not submitted.**

In condemnation proceeding, charge that defendant must establish value of land taken, and decrease in value of land not taken, together with any damages for moving houses, fences, drilling wells, moving windmills, trees, etc., if

───────────────────

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

erroneous, *held* not prejudicial to condemnor, since court did not submit issue of cost of removal of improvements to jury, though instruction is to effect that jury might consider such items.

**9. Evidence ⬤—474(18) — Witness testifying that he knew market value of land was qualified to state such value.**

In condemnation proceeding, witness who testified that he knew market value of land was qualified to state such value.

**10. Evidence ⬤—474(18)—Witness may state opinion as to value of land, if he is acquainted with land, owns similar land contiguous to tract in question, or has peculiar knowledge of value not possessed by jury.**

In proving value of land in condemnation proceeding, it is not necessary that witness be real estate broker or dealer in lands or otherwise qualify as expert, but he may state opinion as to value, if he is acquainted with land in question, owns land of same character contiguous to tract in question, or shows peculiar knowledge of its qualities and value not possessed by jury.

**11. Eminent domain ⬤—239—In condemnation proceeding, jury, in estimating damages to land not taken, was properly permitted to consider decrease in value of streets, as against contention streets had been dedicated to public (Rev. St. 1925, art. 5517).**

In condemnation proceeding, it was not error to permit jury in estimating damages to land not taken to consider decrease in value of streets, as against contention that such streets had been dedicated to public, where commissioners' court had ordered streets closed, land, including streets, had been fenced for 18 years, and no lots had been sold out of any of blocks with reference to streets, so that no estoppel was shown, notwithstanding Rev. St. 1925, art. 5517.

**12. Dedication ⬤—53—Deed dedicating streets grants only easement for purposes named.**

Deed dedicating streets grants only easement for purposes named in it.

**13. Dedication ⬤—1—Valid dedication of street must conclude owner and be accepted by local authorities or general public user.**

It is essential to every valid dedication of street that it should conclude owner and that, as against public, it should be accepted by proper local authorities or by general public user.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dedication.]

**14. Dedication ⬤—15—To constitute dedication of street, it must clearly appear that owner intended to irrevocably set apart land for public use.**

To constitute dedication of private property to public use for street, it must clearly appear that owner intended to absolutely and irrevocably set apart land for public use.

**15. Dedication ⬤—19(1)—Merely laying out grounds or platting or surveying them will not generally constitute dedication of streets.**

Merely laying out grounds or simply platting or surveying them without actually throwing streets open to use or actually selling lots with reference to plat, will not, as general rule, constitute dedication of street.

**16. Dedication ⬤—34—Express dedication of street must be formally accepted by municipality within reasonable time, where there is no user and no sale of lots.**

Where express dedication of street is claimed and there has been no user and no sale of lots with reference to it, municipality must formally accept it and within reasonable time.

**17. Dedication ⬤—29—In absence of user or acceptance of streets by municipality, easement may be surrendered by consent of purchasers of lots, notwithstanding recording of plat.**

Recording plat does not make streets public highways, user or acceptance by municipality being necessary, and, until then, no right is acquired by public, but only by purchasers of lots, by whose consent easement may be surrendered and land freed from all claims by rest of public.

**18. Easements ⬤—17(4)—Dedication of streets on recorded plat is irrevocable as to purchasers of lots sold with reference thereto.**

Where lots have been sold with reference to recorded plat, dedication of streets is irrevocable, as against purchasers of such lots, and it is not necessary to show acceptance by local authorities.

**19. Dedication ⬤—29—Prior to acceptance by municipality or user by public, dedication of property as street may be revoked.**

Prior to acceptance by municipality or user by public, dedication of property as street may, as general rule, be revoked by owner devoting property to private use, and, in order to show complete dedication and acceptance, acceptance must be proved to have been made while offer of dedication was open.

**20. Municipal corporations ⬤—663(1)—Owner of lot abutting on street acquires fee to center of street subject to easement in favor of public.**

General rule is that owner of lot or tract of land abutting on street acquires fee to center of street, subject only to easement existing in favor of public.

**21. Dedication ⬤—63(1)—Commissioners' court held authorized to abandon municipality's claim to streets under dedication deed and plat (Rev. St. 1925, art. 6703).**

Commissioners' court *held* empowered, under Rev. St. 1925, art. 6703, to close streets and abandon all claims which municipality may have acquired to them under dedication deed and plat.

# 1034    4 SOUTH WESTERN REPORTER, 2d SERIES    (Tex.

**22. Eminent domain ⚖=119(1)—Owner of fee to entire area of streets held entitled to damages incident to condemnation proceedings, though streets had been dedicated to public use.**

In condemnation proceeding, owner of fee to entire area of streets *held* entitled to recover damages incident to condemnation as to such area, even though streets had been legally and irrevocably dedicated to public use.

Appeal from Lubbock County Court; Chas. Nordyke, Judge.

Condemnation suit by the Fort Worth & Denver South Plains Railway Company against A. Judd and another. From the award of the commissioners, Judd appealed to the county court. From an adverse judgment in the county court, plaintiff appeals. Affirmed.

Robt. H. Bean and Bean & Klett, all of Lubbock, for appellant.

Vickers & Campbell and Walter F. Schenck, all of Lubbock, for appellees.

HALL, C. J. This is an appeal by the railway company, plaintiff below, from an adverse judgment rendered in the county court of Lubbock county, in a condemnation suit, wherein A. Judd, the owner of the premises, and A. M. Kruger, his tenant, were defendants. The railway company sought to condemn a strip of land 200 feet wide, running diagonally across three blocks, containing 5 acres of land, each a part of the Wheelock second addition to the town of Lubbock. Commissioners were appointed and awarded Judd damages in the sum of $2,150, and Kruger damages in the sum of $1,250. From this award, Judd appealed to the county court, duly filing his objections in writing. Whereupon the plaintiff deposited $6,800, being twice the amount of the award, with the county clerk, in accordance with R. S. 1925, art. 3268. Thereafter the county judge, on the 8th day of July, entered an order directing the clerk to pay Kruger the $1,250 awarded to him as damages. Kruger had a leasehold interest in only a portion of the land owned by Judd, under a lease for 5 years, which did not expire until about 3 years after the trial.

When the case came on for trial in the county court, Kruger moved the court to dismiss him from the suit. The motion was granted over the objection of the railway company. The case was then tried to a jury, and, in answer to special issues, the jury found that the market value of the land owned by Judd, taken for right of way purposes, was $1,375, and that the remainder of the land not taken was decreased in market value $2,050. In accordance with the verdict, the court rendered judgment in Judd's favor for the sum of $3,400.

The evidence shows that Judd was the owner in fee simple of the land described in plaintiff's petition, and that he was occupying the greater portion of the land with his family, as a homestead; that Kruger occupied a portion of the land under his lease; and that the proposed right of way crossed that portion diagonally. Kruger admitted that he had received the $1,250 awarded by the commissioners in full settlement of his claim for damages.

[1] The court submitted the controversy upon two issues, as follows:

"No. 1. What is the market value of the land owned by A. Judd that is to be taken as right of way? Answer in dollars and cents,"

—to which the jury answered, "$1,375."

"No. 2. What do you find is the decrease, if any, in the market value of the land owned by A. Judd not taken for right of way purposes? Answer in dollars and cents,"

—to which the jury answered, "$2,025."

The appellant requested the court to submit the following issue:

"What do you find is the decrease, if any, in the market value of Judd's reversionary interest in the tract of land not taken by the railroad company?"

The appellant contends that the court erred in not submitting this special issue and in submitting the issues quoted above, and as a result of such error the finding of the jury necessarily includes Kruger's damages, which should be deducted from the total amount found by Judd and the judgment entered for the remainder. We overrule these contentions.

By the language of the issues, the jury was confined to a consideration of only the damages claimed by Judd. The record shows that Judd and Kruger both testified concerning the lease from the former to the latter and the lease itself was introduced in evidence. Kruger testified that before the trial commenced he had accepted the damages awarded him by the commissioners. In the light of these facts, it is clear that the jury, in fixing the amount of damages, considered only the damages claimed by Judd.

[2] The appellant insists that the trial court erred in dismissing Kruger from the suit, for the reason that Judd had filed his objections to the award of the commissioners, thereby perfecting the appeal as to all parties, and that the effect of the appeal was to annul the award of the commissioners and require a trial in the county court de novo as to all parties.

The statute does not provide, in cases of this kind, that the trial shall be de novo. R. S. 1925, art. 3266, subd. 6, is:

"If either party be dissatisfied with the decision, such party may within ten days after the

same has been filed with the county judge file his objection thereto in writing, setting forth the grounds of his objection, and thereupon the adverse party shall be cited and the cause shall be tried and determined as in other civil causes ·in the county court."

The rule is established in other jurisdictions that, where the statute provides for a trial de novo in the appellate court, the effect of an appeal is to vacate the decision appealed from until the appeal is disposed of, and that an appeal in such cases by one claimant takes up the whole case where it must be tried as an entirety de novo. But it is further held that ordinarily an appeal by one person does not affect the decision appealed from, as to others, where the statute does not expressly provide for a trial de novo in the appellate court. 2 Lewis, Em. Dom. (3d Ed.) § 793; 2 Nichols, Em. Dom. (2d Ed.) § 431.

[3] Judd, being the only party to the proceeding who was dissatisfied, prosecuted his appeal. Kruger's acceptance of the damages awarded him shows that he was satisfied, and the failure of appellant to file any objections to the award in the county court conclusively shows that it was satisfied with the award as to both claimants. By such failure, the appellant concedes that Kruger was entitled to the amount of compensation awarded him. One of the claimants had the freehold estate and the other the leasehold interest to only a part of the land, and their rights to damages to their respective interests were separate and distinct. T. & P. Ry. Co. v. Saunders (Tex. App.) 18 S. W. 793; G. C. & S. F. Ry. Co. v. Caldwell (Tex. Civ. App.) 102 S. W. 461. We do not construe the language of subdivision 6 of the statute, above quoted, as meaning that the trial shall be de novo in the county court. Appellant insists that the same rule should be applied in this case as obtains in appeals from the justice court to the county court; the effect in such cases being to annul the judgment of the justice of the peace, transfer the entire controversy to the county court, and require a trial de novo as to all parties and issues. These rules, in ordinary appeals from the justice to the county court, obtain, because the statute expressly provides that the trial in the county court shall be de novo.

[4] Moreover, the Supreme Court held, in Slayton v. Horsey, 97 Tex. 341, 78 S. W. 919, that one defendant in a justice court case could appeal to the county court, without making a codefendant, who was not adversely interested to him, an obligee in the appeal bond. The interests of Judd and Kruger in this case are not adverse. Neither are they identical. The claim of either is separate ·from and independent of the other, although under the rules of procedure they were properly joined in the same action. Neither of

them filed any objection to the award of damages made to the other, nor is it conceived that any such right existed. So the sole question involved in the appeal of Judd is the amount of his compensation, in which the tenant had no interest. It may be conceded that, if the award appealed from had not apportioned the damages between the landlord and tenant, then the appeal of one would have resulted in transferring the entire controversy, as between all parties, to the county court.

[5] The rule is settled that the condemnor has no interest in the apportionment of the damages between various claimants. Where the damages are awarded separately, as in this case, and no party is dissatisfied with the award to one claimant, no reason is apparent why the claimant who is satisfied with the amount of damages awarded him should be required to await the determination of the controversy between a dissatisfied claimant and the condemnor. Roper v. New Britain, 70 Conn. 459, 39 A. 850; Clark v. Phelps, 4 Cow. (N. Y.) 190. The railway company had the right to bring the controversy between it and Kruger to the county court by filing objections to the award made him. Its failure to do so is conclusive against its right to insist that he be retained as a party in the county court for the purpose of again litigating an issue which has been settled to the satisfaction of both the company and Kruger. The deposit made. by the railway company was, by the terms of the statute, subject to acceptance at any time by either of the claimants, and, in receiving the amount due him, Kruger was exercising a right conferred by the statute and impliedly assented to by the company in making the deposit.·

[6] That a tenant for years is the owner of property in the constitutional sense, and, as such, is entitled to share in the compensa-. tion and to recover his full damages to his leasehold interest in compensation proceedings, unless the total damages awarded the several interests exceed the value of the land, is settled without dissent. 10 R. C. L. 134, § 118, and 135, § 19; 16 R. C. L. 606.

[7] There is a conflict of authority upon the question whether the owner may recover the cost of removing buildings and other improvements found to be upon the land taken or too near the proposed right of way, as a separate item of damages. Some decisions hold that the cost of removal is merely a fact to be considered in determining the difference between the value of the land before and after the taking. 20 C. J. 803; 2 Elliott on Railroads (2d Ed.) § 966; 4 Sutherland on Damages (4th Ed.) 1073.

In Texas the rule seems to be, as announced in Sutherland, that the claimant may recover, in addition to the depreciation in the value of his land, the cost of removal as a distinct item of damages. City of San Antonio v. Fike·

(Tex. Civ. App.) 224 S. W. 911; Id. (Tex. Civ. App.) 211 S. W. 640.

[8] The court charged the jury that the burden of proof was on the defendant to establish the value of the land taken, and the amount of the decrease, if any, in the land not taken, together with any damages occasioned by moving houses, fences, drilling wells, moving windmills, trees, etc. The facts show that some of these improvements were upon the proposed right of way. If we are correct in holding that the expenses incident to moving these improvements constituted a separate item of damages, the error, if any, in this instruction, is in appellant's favor, because the court did not submit the issue of the cost of removal of the improvements to the jury, although the instruction is to the effect that the jury might consider such items as damages.

[9, 10] The next proposition challenges the ruling of the court in permitting the witness J. M. Mullins to testify as to the market value of the Judd tract of land, over its objection that Mullins was not shown to be properly qualified to give his opinion as to such market value. The witness testified that he knew the market value. He thereby qualified himself to state the value. Davis v. Fain (Tex. Civ. App.) 152 S. W. 218; Central State Bank v. Henderson (Tex. Civ. App.) 286 S. W. 518.

The appellant did not cross-examine him for the purpose of testing his qualifications, but was content with the objection that the appellee had not shown that the witness, by experience or peculiar knowledge, was qualified to testify. In proving the value of the land, it is not necessary that a witness shall be a real estate broker or a dealer in lands or otherwise qualify as an expert. If he is acquainted with the land in question, owns land of the same kind or character contiguous to the tract in question, or shows that he has a peculiar knowledge of its qualities and value not possessed by the jury, he may be allowed to state his opinion of its value. The objections to such testimony go to its weight rather than to its admissibility.

[11] The final contention is that the court erred in submitting the (2) special issue because it permitted the jury, in estimating the damages to the land not taken, to take into consideration the decrease in the value of the streets, except Tenth avenue, shown on the plat within the boundaries of the land in controversy, insisting that such streets had been dedicated to the public for use, and because there was no evidence showing that the dedication was not irrevocable.

The record shows that Wheelock's second addition to the city of Lubbock, of which the land in question is a part, was never within the corporate limits of the city of Lubbock. On the 7th day of May, 1909, Wheelock and wife, who then owned the property, filed a dedication deed and plat. The deed recites:

"We do by these presents dedicate and grant to the public for public use the streets and alleys shown by the map above mentioned as long as the public may continue to use the same as public streets and alleys."

The map shows a street between blocks 80 and 81 and 81 and 82.

A deed was introduced from L. D. Hart and wife, subsequent vendees of Wheelock, in which Judd is the grantee, by which the grantors quitclaim to Judd all their interest in all streets in Wheelock's second addition. This instrument if effective, conveys the street shown on the plot as Eleventh avenue, which separates blocks 80 and 81. There was also introduced in evidence an order made by the commissioners' court of Lubbock county, at its July term, 1915, which recited that it has been made to appear to the court that the lands dedicated by Wheelock and wife for street purposes in the Wheelock's second addition are no longer used for street purposes, and that it is the desire and request of the adjoining property owners within said territory that the streets be formally closed by an order of the court, and, it appearing to the court that it will be to the advantage of the county and all parties in interest that the request be granted and said street closed, therefore "it is ordered by the commissioners' court of Lubbock county, Texas, that all of the streets designated upon the map of said addition, within the following described bounds, be and the same are hereby closed." The effect of the order, if valid, is to abandon as streets and highways the streets involved in this suit. The order further recites:

"It is further ordered by the court that all title to said streets that was vested in the commissioners' court of Lubbock county, by virtue of the dedication deed executed by Wheelock and wife for the benefit of the public, be and the same is hereby divested out of said county and vested in the owners of the record title thereto, and such owners are hereby fully authorized and empowered to use and to close said described streets at their pleasure."

The record further shows that the street shown on the plat as Tenth avenue, which separates blocks 81 and 82, is a state highway running from Lubbock to Slaton. Judd testified that the other streets shown on the map had never been used as streets since he had owned the property; that he had owned and resided there about 8 years; that the property was fenced when he bought it from L. D. Hart and Mrs. Doherty, and had been fenced ever since.

J. T. Hart testified that he had known the land included in the Wheelock's second addition since 1894, and that no streets or alleys had ever been used by the public through that part of the addition owned by Judd; that a street was opened up on the west line, but not through Judd's land; that the land owned by Judd had been fenced at all times and no street had been graded through it.

There is further evidence to the effect that Judd's land including the streets had been fenced for at least 18 years prior to the date of the trial. While under Revised Statutes, 1925, art. 5517, Judd would not have title to the streets by limitation, still this is a fact to be considered upon the issue of intent and effectiveness of the dedication and of acceptance by the county. The streets have never been graded nor used by the public as such, nor has there been any formal acceptance of them as highways by the county authorities.

As stated above, the deed by Wheelock and wife purported to dedicate the streets shown upon the plat so long as they might be used by the public as such. This recital in the deed would be effective as a common-law dedication if the streets had ever been used by the public or accepted by the county. There is no question of implied dedication, nor has there been any condemnation under the statute. There is no evidence that the county has ever formally accepted under the deed or exercised any authority over the streets, nor has there been any user whatever by the public.

[12] A dedication deed grants only an easement for the purposes named in it. O'Neal v. Sherman, 77 Tex. 182, 14 S. W. 31, 19 Am. St. Rep. 743.

[13] It is essential to every valid dedication that it should conclude the owner, and that, as against the public, it should be accepted by the proper local authorities or by general public user. Poindexter v. Schaffner (Tex. Civ. App.) 162 S. W. 22; 1 Elliott on Roads and Streets (4th Ed.) 122; 8 R. C. L. 898; 1 Thompson on Real Property, § 441.

[14] In order to constitute a dedication of private property to a public use, it must clearly appear that the owner intended to absolutely and irrevocably set apart the land for public use. Summitt Place v. Terrell (Tex. Civ. App.) 207 S. W. 145, 148; City of Atlanta v. Ry. Co., 56 Tex. Civ. App. 226, 120 S. W. 923.

[15] "Merely laying out grounds or simply platting or surveying them, without actually throwing streets open to use or actually selling lots with reference to the plat will not, as a general rule, constitute a dedication." 1 Elliott on Roads and Streets (4th Ed.) § 128.

[16] Where an express dedication of a street is claimed and there has been no user and no sale of lots with reference to it, the municipality must formally accept it and within a reasonable time. City of Galveston v. Williams, 69 Tex. 449, 6 S. W. 860; Gilder v. City of Brenham, 67 Tex. 345, 3 S. W. 309; Huffman v. Alexander (Tex. Civ. App.) 276 S. W. 959.

[17] "Recording a plat does not make streets public highways. They do not become such except by user or acceptance by the municipality. Until then there is no right acquired by the public, but only the purchasers of the lots, by whose consent the easement may be surrendered and the land freed from all claims by the rest of the public." 1 Thompson on Real Property, § 440.

[18] If lots had been sold with reference to the recorded plat, then, as against the purchasers of such lots, the dedication is irrevocable and it is not necessary to show acceptance by the local authorities. North Texas Traction Co. v. Brittson (Tex. Civ. App.) 279 S. W. 892.

This rule rests upon the principle of estoppel. Since no lots have been sold out of any of the three blocks with reference to the streets, there is no estoppel en pais shown. So far as the record discloses, all of the blocks involved in this suit have been transferred by the several grantors to the several grantees, as one body of land. Under such conditions, there being no third parties owning any specific part of the property as an entirety, there is no one in favor of whom the principle of estoppel could be invoked. Each grantee having acquired the entire property had the right to ask that the streets be abandoned by the county and could also insist that there had been no dedication.

[19] Prior to acceptance by the municipality or user by the public, a dedication of property as a street may, as a general rule, be revoked by the owner devoting the property to a private use, and, in order to show a complete dedication and acceptance, the acceptance must be proved to have been made while the offer of dedication was open. City of Houston v. Finnigan (Tex. Civ. App.) 85 S. W. 470 (error refused).

[20] The general rule is that the owner of a lot or a tract of land abutting upon a street acquires the fee to the center of the street, subject only to the easement existing in favor of the public. Mitchell v. Bass, 26 Tex. 372; Day v. Chambers, 62 Tex. 192; Cocke v. T. & N. O. Ry. Co., 46 Tex. Civ. App. 363, 103 S. W. 407; Summitt Place v. Terrell, supra; Texas Bitulithic Co. v. Warwick (Tex. Com App.) 293 S. W. 160.

If there has been a common-law dedication, we think, under the facts and the rules of law above stated, that such dedication never became irrevocable. We are strongly inclined to the opinion that there has been no dedication and since no lots have been sold there is no issue of estoppel that will avail the railway company anything in this litigation.

[21] But aside from this question, we think the order entered by the commissioners' court had the effect of closing and abandoning all claim which the municipality may have acquired, if any, in virtue of the dedication deed and plat. Under the provisions of Revised Statutes 1925, art. 6703, the commissioners' court has control of the streets in an addition to a town where such addition is not within the corporate limits. The proposed

streets were never acquired by purchase. or through any condemnation proceedings instituted under the statute, and we think the commissioners' court, under all the facts, had the power to discontinue them and abandon all interest which the county and the public might have acquired, if any, through the execution and recordation of the deed and plat. Uvalde County v. Oppenheimer, 53 Tex. Civ. App. 137, 115 S. W. 904; Morriss v. Cassady, 78 Tex. 515, 15 S. W. 102.

[22] As the owner of the fee to the entire area of the streets, Judd was entitled to recover damages incident to the condemnation proceedings, even if the streets had been legally and irrevocably dedicated. The appellant made no effort to limit his right of recovery to the ownership of the fee and his easement over them, if the streets really existed, and is, therefore, not in a position to complain here.

For the reasons stated, the judgment is affirmed.