Richard S. COLLEY

v.

Stephen Marcus CARLETON et al.

No. 1324.

Court of Civil Appeals of Texas,
Corpus Christi.

Sept. 21, 1978.

Sam A. Westergren, Jr., Corpus Christi, for appellant.

N. F. Jackson, Jr., Rockport, for appellees.

## OPINION

NYE, Chief Justice.

This is a condemnation proceeding. The County of Aransas, Texas, condemned an avigation easement[1] over a portion of the land and improvements owned by Stephen Carleton, Phillip Carleton, Marcus Carleton and Priscilla Carleton. This land was subject to a long-term lease owned by Richard S. Colley. The avigation easement was necessitated by the extension of a runway on the county owned airport in the Rockport-Fulton area. The Special Commissioners found that the measure of damage to the land was $25,504.45. They awarded the entire amount to the landowners and denied any recovery to the lessee. The lessee timely filed his objection to the commissioners' award in the district court. The case was then tried before a jury which also found for the landowners. The lessee perfected his appeal to this Court.

Prior to the beginning of the district court trial, the parties admitted that: the property in question was subject to condemnation; that the entire fee, including the interests of the landowners and the lessee, had been damaged in the amount of $25,-504.45 by the taking; and that the only issue to be tried in the district court was that of apportionment, if any, of the damages between the landowners and the lessee. The County was excused from further participation in the trial. After the receipt of all of the evidence, the case was submitted to the jury upon two special issues. The jury found: 1) that the landowners were entitled to 100% of the $25,504.45 damages caused by the taking of the avigation easement; and 2) that the lessee was entitled to 0% of the $25,504.45 damages. The lessee, having unsuccessfully moved the trial court for a directed verdict, for a judgment non obstante veredicto, and for a new trial, has perfected his appeal to this Court. He attacks the jury's findings here on appeal on legal and factual insufficiency points of error.

The record indicates that on January 2, 1952, the appellant lessee executed a fifty-year lease encompassing the surface estate of approximately 33 acres in Aransas County and the improvements thereon which were then owned by Leon and Helen Carleton, the appellees' predecessors in title. The lease obligated the lessee to pay all ad valorem taxes and annual rent of $4,200.00 for the full term of the lease. The lessee was also obligated to erect three additional buildings, each with a minimum value of $3,500.00, within the first three years of the lease term. At the end of the lease, the land and the title to all improvements was to revert and remain in the landowners. At the time the avigation easement was taken, five residences and one storage building were located on the leased premises. Over twenty-six years of the 50-year lease remained at the time of the taking.

Throughout all of the condemnation proceedings, the appellant, as a long-term lessee, has contended that he is entitled to share in the condemnation damages to the extent that his leasehold interest has been damaged. In considering appellant's specific contentions on appeal, we shall keep in

---

1. The airspace above land for the navigation of aircraft.

mind the general principles concerning condemnation suits of this kind.

■ Section 3 of article 3265, Tex.Rev. Civ.Stat.Ann. (1968), provides as follows: "When only a portion of a tract or parcel of a person's real estate is condemned, the commissioners shall estimate the injuries sustained and the benefits received thereby by the owner; whether the remaining portion is increased or diminished in value by reason of such condemnation, and the extent of such increase or diminution and shall assess the damages accordingly."

The term "owner", as the term is used in this section, includes a lessee for years as well as any other person who has an interest in the property. *Elliott v. Joseph,* 163 Tex. 71, 351 S.W.2d 879, 884 (1961); *Houston North Shore Railway Co. v. Tyrrell,* 128 Tex. 248, 98 S.W.2d 786, 793 (1936). The rules applicable to the condemnation of a fee title apply equally to the condemnation of a part of a leasehold interest. *Elliott v. Joseph,* 163 Tex. 71, 351 S.W.2d 879, 884 (1961); *Brazos River Conservation & Reclamation Dist. v. Adkisson,* 173 S.W.2d 294 (Tex.Civ.App.—Eastland 1943, writ ref'd). Both the lessor and the lessee are entitled to share in the award according to their respective interests. It is fundamental that compensation is due the lessor for damages to his reversionary interest, if any, and to the lessee for damage to his leasehold, if any. *Aronoff v. City of Dallas,* 316 S.W.2d 302 (Tex.Civ.App.—Texarkana 1958, writ ref'd n. r. e.); *Brazos River Conservation & Reclamation Dist. v. Adkisson,* 173 S.W.2d 294 (Tex.Civ.App.—Eastland 1943, writ ref'd); *Fort Worth & D.S.P. Ry. Co. v. Judd,* 4 S.W.2d 1032 (Tex.Civ.App.—Amarillo 1928, writ dism'd); 4 Nichols, Law of Eminent Domain, § 12.42[1] pp. 12–481—12–482 (1971).

■ In general, an appeal in a condemnation suit to the district court is a special trial de novo proceeding which determines only the issue of the condemnor's right to condemn and the amount of damages. *Elliott v. Joseph,* 163 Tex. 71, 351 S.W.2d 879 (1961). Where, prior to trial, the landowners admit the property in question is subject to condemnation and has been condemned, the only issue in controversy is the amount of damages. In such a case, the landowner has the burden of proof on this issue. *State v. Walker,* 441 S.W.2d 168, 170 (Tex.Sup. 1969); *State v. Jackson,* 388 S.W.2d 924 (Tex.Sup.1965).

■ In this case, the Special Commissioners found that the damages to the entire tract, including the leasehold interest and the reversionary interest, because of the easement taken, to be $25,504.45. Prior to trial, the parties stipulated not only that the tract in question was subject to condemnation, but also that the damages as found by the Special Commissioner should stand. In view of these stipulations, the only issue remaining to be decided in the district court trial was the proper apportionment of this award between the lessee and the landowners. In this connection, the lessee has the burden to show the amount of the damages attributable to his leasehold interest, if any. Special instructions should be submitted by the trial court to describe the lessee's interest. The balance of the damages, if any, would belong to the reversionary interest of the landowners. See and compare *Aronoff v. City of Dallas,* 316 S.W.2d 302 (Tex.Civ.App.—Texarkana 1958, writ ref'd n. r. e.); *Brazos River Conservation & Reclamation Dist. v. Adkisson,* 173 S.W.2d 294 (Tex.Civ.App.—Eastland 1943, writ ref'd); *Fort Worth & D.S.P. Ry. Co. v. Judd,* 4 S.W.2d 1032 (Tex.Civ.App.—Amarillo 1928, writ dism'd); 4 Nichols, Law of Eminent Domain, § 12.42[1] (1971); Rayburn, Texas Law of Condemnation §§ 194–200 (1960 & Supp.). Once the lessee has introduced evidence of damages to the leasehold estate the landowners had the burden to go forward with evidence to refute the lessee's prima facie proof. *Cf. State v. Walker,* 441 S.W.2d 168 (Tex.Sup. 1969); *State v. Jackson,* 388 S.W.2d 924 (Tex.Sup.1965); *Grieger v. Vega,* 153 Tex. 498, 271 S.W.2d 85 (1954); *Clark v. Hills,* 67 Tex. 141, 2 S.W. 356 (1886); *State v. Beever Farms, Inc.,* 549 S.W.2d 223 (Tex.Civ.App.—San Antonio 1977, writ ref'd n. r. e.).

At this trial, the lessee produced testimony from a land appraisal expert concerning what amount of the stipulated damages should be apportioned to the leasehold estate. The landowners chose not to introduce any evidence concerning the apportionment of the damages. In response to two special issues, the jury found, in effect, that the owners should receive the entire damage award to the exclusion of the lessee. The appellant lessee attacks these jury's findings in four points of error on legal and factual sufficiency grounds.

Mr. Bob Crow, a land appraisal expert, testified on behalf of the lessee. Appellees do not contend on appeal that Crow was not qualified to testify as an expert witness. Crow testified that the nature of the easement, including the resulting vibrations, noise and risk of accidents, affected the lessee's use of the leasehold estate and, in effect, diminished its value. A portion of the avigation easement actually covered three of the five buildings on the leased premises. The lease was introduced into evidence and Mr. Crow identified the property described in the lease as that subject to the avigation easement. The lease expressly provided, and there is testimony to the effect, that the appellant lessee had the exclusive right of possession of the land including the improvements thereon and the air space above, until the year 2002.

In arriving at his valuation of the leasehold interest in comparison with the reversionary interest, Crow utilized the actual earnings method and the highest and best use method. Concerning the actual earnings method, Crow compared both the negative and positive aspects of the benefits of the lease as related to the landlord and the tenant. In examining the gross and net income, and considering a factor for recapture of the cost of the improvements on the land, Crow testified that the lessee had a vested value of 87.3%, as opposed to 12.7% for the lessor. He further testified that the income of the landlord was set at a fixed rate under the terms of the lease and would remain virtually unaffected for the remainder of the lease term regardless of the easement while, on the other hand, the lessee's income would fluctuate depending upon the desirability of renting a residence subject to the sound vibrations and unsightliness incident to the avigation easement.

In comparing the leasehold interest and the reversionary interest according to the highest and best use, Crow testified that the value related to the leasehold itself would be $482,994.14 while the residual value in the fee estate would be $53,666.02. Projecting the leasehold estate to be used as a trailer park (considered as the highest and best use) during the remainder of the lease term, Crow testified that in his opinion the leasehold estate was worth 90% while the reversionary interest, 10%.

■ We have carefully reviewed the entire record in this case. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.Sup.1965); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). The parties stipulated that the avigation easement resulted in damage to the entire tract in the amount of $25,504.45. The appellant lessee has exclusive right to possession of the tract of land including the improvements from the date of the taking until the year of 2002. The possessory interest of the landlord will not commence until the lease terminates in the year 2002. Regardless of any adverse effect the avigation easement may have upon the property, the record shows conclusively that the landowners cannot be damaged by the avigation easement until at least the year 2002. The expert witness offered testimony to the effect that the highest valuation that could be placed on the damages to the reversionary interest would be 12.7% under the actual earning valuation and 10% under the highest and best use valuation. We hold that the evidence is insufficient to support the jury's answer that the landowners were entitled to 100% of the damages. Actually, there was no one who testified to such effect. Conversely, the evidence shows that the leasehold estate did suffer damage as a result of the avigation easement. Therefore, the evidence establishes conclusively the opposite of the jury's failure to find that the lessee suffered some damages.

The jury's finding of zero damages is against the great weight and preponderance of all of the evidence.

The amount of damages is always a question of fact for the jury and unless the finding is so excessive or so grossly inadequate as to indicate operation of an improper influence in determination of the amount, it will not be disturbed on appeal. *Coastal Ind. Water Authority v. Trinity Portland Cem. Div.*, 523 S.W.2d 462 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n. r. e.). While the trier of fact is at liberty to believe or not believe the testimony of any witness in part while rejecting it in another part, the jury cannot properly find the converse of a witness' testimony when there is no independent evidence to support such finding. *Creech v. Thompson*, 156 Tex. 561, 297 S.W.2d 817 (1957); *US-Life Title Ins. Co. of Dallas v. Rossco, Inc.*, 550 S.W.2d 419 (Tex.Civ.App.—Eastland 1977, writ ref'd n. r. e.); *Briscoe v. Laminack Tire Service, Inc.*, 546 S.W.2d 695 (Tex.Civ.App.—Texarkana 1977, writ ref'd n. r. e.).

The judgment of the trial court is accordingly REVERSED and cause REMANDED for trial.